[PHILADELPHIA, JANUARY 3RD, 1839.]

## CROZER and Others· *against* LELAND.

#### IN ERROR.

an action brought by the Trustees of a Company, incorporated for the purpose of embanking certain meadows, against one of the corporators, to recover the amount of a tax assessed upon him for the support of the embankments, it was *held*, that one of the trustees, who was also a corporator, was not a competent witness to prove that a notice required by the act of incorporation to be given to the members to work out their assessments, before bringing suit to recover the tax, was given to the defendant.

2. Where an act incorporating a company for the purpose of embanking certain meadows, directed that the expenses should be apportioned among the members, and that the trustees should call upon each member to work out his portion of the expense, and should any member refuse to make payment, that the trustees should have power to sue for and recover the same; it was *held*, in a suit brought by the trustees against a corporator to recover his proportion of an assessment, 1st, That it was necessary for the plaintiffs to prove, that the defendant was called upon to work out his tax before they could recover. 2nd, That it was not necessary that such notice should be under the corporate seal, but that it might be by parol, if given by any known officer of the corporation. 3d, That the defendant was not to be considered as having waived or admitted notice by the circumstance of his not having stated the want of notice before referees and a justice of the peace on former hearings as an objection to a recovery against him.

THIS was a writ of error to the Court of Common Pleas of the County of Bucks, to remove the record of an action on the case brought by Samuel Crozer, Robert Crozer, and William Taylor, trustees of "The Penn's Manor Meadow Company," against Joseph Leland.

The suit was originally instituted before a justice of the peace; and it came into the Court below on appeal. It was brought to recover of the defendant the sum of $79 19, the amount of tax assessed on his land by "The Penn's Manor Meadow Company," for the years 1832, 1833 and 1834.

The Penn's Manor Meadow Company was incorporated on the 4th of March, 1815, for the purpose of enabling certain land-holders

(Crozer *v.* Leland.)

residing near the river Delaware, to make embankments, and keep up dykes, &c.; the expense of which was to be defrayed by the members of the corporation agreeably to assessments made by the company. Charles Ellet was one of the original corporators; and the defendant was his successor by becoming the purchaser of his land.

The 5th section of the act of incorporation provided as follows:

" Sect. 5. And be it further enacted by the authority aforesaid, That Charles Ellet, Samuel Crozer, and Barclay Ivins are hereby appointed the present trustees; who, and whose successors duly elected according to this act, shall attend to and have dug a sufficient main ditch through the main branches of the marsh or meadow aforesaid, so as to give all the fall the ground will admit of; and shall keep the same open; and likewise the bank and sluices at or near the river in good repair; and they shall keep a regular account of the expenses thereof, which shall be apportioned among the members according to the quantity of land by them respectively held in said meadow; and until it shall be otherwise directed by the company, they shall call on each member to work out his, her, or their portion of the expense aforesaid; *Provided*, That the nature of the work and the urgency of the case will admit; and should any member neglect or refuse to make payment, the said trustees shall have power to sue for and recover the same, and all other moneys which shall become due to the company, as other debts of the same amount are recoverable; and cause a survey and valuation of the said marsh to be made when directed so to do by the company."

On the trial before Judge Fox, on the 13th day of September, 1838, the plaintiffs, for the purpose of proving the notice required by this section, called William Taylor, a corporator, and offered to prove by him, that he served notice upon Joseph Leland to work out his tax. But the Court decided, that the said William Taylor, being a member of the Penn's Manor Meadow Company, could not be admitted as a witness to prove the notice, and rejected his testimony: to which opinion the counsel of the plaintiffs excepted.

The plaintiffs then, with the view of proving notice or a waiver of notice, called several witnesses, whose testimony was as follows:

David Brown.—" I was on a reference three years ago between the company and Leland; it was upon the reference from the justice. I don't know from any thing said by Leland that he admitted the claim, but he did not dispute it, but thought he ought not to pay it. He said the trustees had not cleared out the creek, and his meadows had not produced as they formerly had; and he ought not to pay his tax. I do not recollect he made any other defence. He did not make any objection but that the company had not cleared out the

(Crozer *v.* Leland.)

creek. He did not object for want of notice. They had a settlement between them. Joseph contended they had not allowed him for every thing. Leland cannot read; can't say the book was read to him. The referees were Joseph Howell and Harvey Gillingham."

Martin Mull, Esq.—"The suit was brought before me. I read the items in the account. He said he would pay them provided they would take the water off his meadow. He said he considered himself damaged to the amount of several hundred dollars. I don't think he made any objections to the amount of tax—he did not admit—he made no objection."

George Ivins.—"I have knowledge of his having notice. I was present when I heard William Taylor ask him to work in 1832. Leland and Taylor generally worked together on the meadow. Whenever there was work done Leland and his people helped to do it. I never heard him find any fault with the amount of his tax, or valuation, but that he got no good. He never made any objection as to the amount of tax. He said he was willing to pay the tax, provided they would drain his meadow. I do know he worked in 1833. He worked about the bank. One-half the bank is on his property. Leland's meadow runs to the bank. The creek runs directly from the river. There was work done in 1832 and 1833. I do not know that he had notice in 1833 or 1834."

It was also proved that, at the annual meetings in 1832, 1833, and 1834, upon settling the accounts of the trustees, a credit was allowed to Joseph Leland every year; and from the account book it appeared that he was allowed at the annual meeting of 1833 a credit of $40 82 for work at the bank in the summer of 1832.

After the testimony was closed on both sides, the counsel for the plaintiffs requested the Court to charge the jury upon the following points:

"1st. That it was unnecessary (in order to entitle the plaintiffs to recover) to prove that the defendant had received notice to work out his tax.

2nd. That if notice were necessary, then parol notice was sufficient; and that the law did not require a notice under the seal of the corporation.

3d. That if the jury believed the witnesses offered by the plaintiffs upon the subject of notice, it amounted to a waiver on the part of the defendant of his right to notice to work out the tax."

THE COURT charged as to the 1st point, that before the plaintiffs were entitled to recover, it was incumbent on them to prove that

the defendant was called upon to work out his tax, unless the nature of the work, and the urgency of the case would not admit of it; and that the trustees were bound to show this before they could recover.

2nd. That if the defendant were called upon by any known officer of the corporation, it would be sufficient to give notice by parol. In such case a notice under the corporate seal would not be necessary. But the call must be an authorised call in some way by the corporation.

3d. That there was no waiver of the notice proved.

The plaintiffs' counsel excepted to the charge, and a verdict having been rendered for the defendant, they brought this writ of error; and assigned for errors the rejection of the testimony of William Taylor, and the answers of the Court to the points proposed.

Mr. *Ross*, for the plaintiffs in error, cited *Jordan* v. *Cooper*, (3 *Serg. & Rawle*, 575. 584.)    *Bank of Pennsylvania* v. *Hadfield*, (3 *Yeates*, 560.)    *Douglas* v. *Sanderson*, (2 *Dall.* 116.)    *Kidd* v. *Riddell*, (2 *Yeates*, 444.)    *Harman* v. *Drinkwater*, (1 *Greenleaf*, 27.)    *Fisher* v. *Hyde*, (2 *Yeates*, 256.)

Mr. *Porter*, (with whom was Mr. *Chapman*,) for the defendant in error, cited *Bank* v. *Porter*, (2 *Watts*, 141.)    *The United States* v. *Johns*, (4 *Dall.* 412.)    *Sheffer* v. *Rempublicam*, (2 *Yeates*, 39.) *Smith* v. *Bank of Washington*, (5 *Serg. & Rawle*, 318.)

The opinion of the Court was delivered by

GIBSON, C. J.—The rejected witness was not only interested as a corporator, but nominally a party on the record. The decision in *Harman* v. *Drinkwater*, (1 *Greenleaf*, 27,) cited in support of his claim to competency, is sustainable on the principle of necessity; but what necessity is there here? The corporation might have employed a servant for the particular business; and if it has failed to provide the evidence of it which the law requires, it has no reason to complain of the consequences. It is said, however, that a party to the action, is always competent to swear to the service of notice. He may be so where the fact is collateral to the issue, and proof of it is to be made to the Court; not where it is a part of the issue, and proof of it is to be made to the jury. A plaintiff would, for instance, not be allowed to swear to notice of the dishonour of a bill—as may be collected from *Bank* v. *Porter*, (2 *Watts*, 141.) The only instance in which this distinction has been overleaped, is to be found in *Kidd* v. *Riddell*, (2 *Yeates*, 444)—a Nisi Prius case, inconsiderately decided, and imperfectly reported. It was better preserved in *Davies* v. *Houston*, (*Id.* 290,) where it was accurately said, that a party may

be examined to a collateral point; and notice of an impending action against a justice of the peace, is certainly not a collateral point, but like notice to quit, a part of the title.

The direction on the first of the plaintiff's points was incontestably right, as the act of incorporation explicitly requires that the corporators be called on to work out their assessments before they are called on to pay; and on the second of them, it accorded with the prayer. The direction on the third, was that the plaintiff had failed in proving notice to work, or a waiver of it. It is not alleged that there was evidence of notice; and what has been called evidence of waiver is proof of work actually done for the first year included in the declaration, as well as the defendant's omission to insist on want of notice in a conversation which he had with a third person, or in the course of a hearing when the cause was before arbitrators. I lay the first of these out of the case; for the plaintiff could not, by including an assessment which was satisfied, and in respect to which the defendant had actually received notice, affect him as to the assessments in contest; and his omission to state all his objections in conversation with a person who had no right to interrogate him, stands on no better footing. He can waive nothing to one who can demand nothing, and to whom he is not bound to speak out. Nor is the case stronger against him in respect to his omission to make want of notice a point of defence before the justice or the arbitrators. For the particular occasion, a party is taken to admit what he does not deny: but he is not restricted to the same defence at a subsequent trial. He may not have been apprised of all his grounds of resistance; or he may have thought his main point so impregnable as to require no assistance from any other. It has been held in *M'Lughan* v. *Bovard*, (4 *Watts*, 308,) that a case made, but subsequently withdrawn, is not evidence of the facts stated in it; and it cannot be doubted that exceptions to a deposition, a deed, or the competency of a witness, would not be precluded by an omission to take it at a former trial. A party has a right to change his plea; and *a fortiori* he has a right to shift his ground where it does not involve a matter of pleading. There was therefore no evidence of waiver to be left to the jury.

Judgment affirmed.