*Hughes & Farquhar,* for plaintiff in error ; *John W. Ryon,* Esq., and Hon. *Myer Strouse* for defendant in error.

---

*Seventh Judicial District.*

## In the Court of Common Pleas of Montgomery County.

### (*In Equity.*)

## SALLADE *et al. v.* ALBERTSON.

A bill in equity averring that the defendant is seeking to exact usurious interest by legal process, as the application of common law or statutory remedies, avers an act contrary to law, and prejudicial to the interests of the person from whom it is sought to be exacted ; and such person has an equity, which may be enforced by chancery process.

Equity abhors continuous litigation and a multiplicity of suits, and will intervene for the prevention of these evils.

Whatever is inequitable, which, at the same time is contrary to law, for which there is no adequate remedy at law, whether sought to be accomplished by legal process or legal means, is subject to the restricting powers of a court of equity—unless excluded by a special statute.

Sur Demurrer to Bill in Equity

Opinion by

Ross, P. J. Though the demurrer, in form consists of four distinct grounds, it raises in fact but three specific inquiries.

1. Has the defendant an equity which will sustain his bill? 2. Has. he an adequate remedy at law ? and 3. Can a suit at law, based upon a statutory right of process, be restrained by injunction ?

It is hardly necessary to say, that in ruling upon the sufficiency of the demurrer, the court can look only at the averments in the bill, and must disregard the answer filed with the demurrer, which is not now technically before us. This remark is made, because upon the argument, the counsel for the defendant, inadvertently no doubt, to some extent predicated their reasoning upon some of the facts disclosed by the answer. Disregarding then, in the case, all else but the facts averred by the bill, and accepting

them as true, we will consider the three-fold objections presented by the demurrer.

1. Has the plaintiff disclosed in his bill such equitable right or rights as will sustain it?

He avers that he borrowed money upon two separate occasions, of the defendant, paying for the loans, considerable sums as premiums. Both loans were secured by bills single. The first was dated January 2, 1866, payable one day after, in the sum of $3,000, from which the premium, then deducted, was $144. The actual amount received by the plaintiff was $2,856, and judgment was entered upon it in the common pleas of Montgomery county, January 8, 1866. The second was dated February 18, 1866, payable one day after date, in the sum of $2,752.36. The premium deducted from this was $200, and the actual amount received by the plaintiff in this transaction was $2,552.36. Judgment was entered upon it in the district court of Philadelphia, May 17, 1870.

Usurious interest was demanded, from time to time, upon these loans, and it was secured by certain notes, executed at various times, and delivered by the plaintiffs' agent to Mr. Albertson. These notes are dated at different periods, beginning March 18, 1868, and ending September 12, 1869. The amount of usury thus paid upon an actual loan of $5,408.36, from January 6, 1866, to September 12, 1870, was $2,321.58. To this sum is to be added the original premiums, amounting to $344, footing up the aggregate of the usury demanded and paid, to the enormous sum, compared with the loan, of $2,665.58.

The plaintiff further avers, that, including in his payments these usurious sums, he has paid the defendant the principal of the loans with their legal interest in full; and he also alleges that at this time a *scire facias* is pending to revive the judgment entered in Montgomery county. The final allegations of the bill in paragraphs 8 and 9, are as follows: "That at the times of making the several payments on account of said loans, there was no specific appropriation of the money to the particular loan, but they went on account of said Sallade's general indebtedness to said Albertson, as secured by the two judgments. The aggregate amount of the several payments being sufficient to pay the whole indebtedness due the said Albertson, together with the legal interest due thereon. That the accounts of these various payments and the evidence of all the complicated transactions in reference to said loans, are in the possession of the said Albertson, and they cannot be so severed as to be applicable exclusively to said suit on said $3,000 judgment, so that the said complainants cannot obtain adequate relief at law, upon the trial of the said *scire facias*."

Upon these facts, is an equity disclosed?

Assuming, as we are bound to do, that the averments in the bill are true, it appears, 1. That there was an usurious contract. 2. That the principal and legal interest due upon that contract have been paid in full.

3. That the defendant is seeking to exact the payment of usurious amounts, by reviving the Montgomery judgment, for the purpose of collecting it by execution process; and 4. That the payments on account of the one judgment are so involved with the other, that in order to meet the merits of the case, the entire financial transactions of the parties must be investigated·

Under these facts the act of the defendant in prosecuting the *sci. fa.* with a view to the collection of the judgment, is a perversion of legal process. By its means Mr. Albertson would obtain a result forbidden by the law. It is provided by statute, that no matter what the contract as to the rate of interest may have been, the debtor shall not be required to pay the creditor the excess over the legal rate. The attempt to recover that excess by legal process, is therefore an act contrary to law, while it is at the same time, prejudicial to the individual rights of Mr. Sallade. But where an act is at once contrary to law and prejudicial to the rights of an individual, then such an individual has an equity which will maintain a bill; and the statute expressly devolves power upon the court to exercise chancery power in such a case. It matters nothing whether the result is sought under legal forms or not. Equity will look at the purpose, and disregard the form of the act, against which the complainant seeks to be relieved. Lyons' app., P. F. S. 15; Hunter's appeal, 4 Wr. 161; Hagner *v.* Heyberger, 7 W. & S. 104. This principle has been extended to acts contrary to equity, as well as to law. Church *v.* Moore, 10 Barr 280; Stockdale *v.* Ullery, 1 Wr. 486; Kirkpatrick *v.* McDonald, 1 Jones 387.

It is very clear, therefore, that a bill averring that the defendant is seeking to exact usurious interest by legal process, or the application of common law, or statutory remedies, avers an act contrary to law, and prejudicial to the interests of the person from whom it is sought to be exacted; and that such person has an equity, which is disclosed by the bill, and which may be enforced by chancery process.

This conclusion is unquestionably correct upon principle. It does not lack adjudicated cases to sustain it. It has been ruled in Wister *v.* McManes, 4 P. F. S. 326, that the defendant in a judgment, given to secure usurious interest, is entitled to relief in equity, even after a court of law has refused to open the judgment. The same ruling exists in New York, 5 John Ch. Rep. 122.

2. But it is said that while an equity may be disclosed by the bill, yet the plaintiff has an adequate remedy at law to which he must resort. It is unquestionably true that if, for an act contrary to law and prejudicial to individual right, there exists an adequate remedy at law, equity will not intervene. This is too well settled to require authority to sustain it. But it is clear that this plaintiff has no adequate remedy at law. It is evident that in order to reach the result he can obtain by this bill, he must, as a preliminary step, make application to the courts to open these judgments. Unless he should succeed in this, he will lose the premiums

paid on account of the loan. It is well settled that upon a *scire facias* to revive a judgment, usury paid at the rendition of the judgment cannot be shown as a defense. Lyle *v.* Williams, 15 S. & R. 131 ; McVeigh *v.* Liller, 7 Barr 279 ; Hall *v.* Boyd, 6 Barr 260 ; Harper *v.* Kean, 11 S. & R. 292. Therefore, the $344 would be lost, unless both judgments were opened. But the opening of a judgment is of grace, not of right. Wister *v.* McManes, *supra.* It depends upon the discretion of the judge before whom the application is made ; and it is apparent that a remedy which is conditioned upon the exercise of a discretion, cannot be termed an adequate remedy. If, however, the judgments be opened, issues must be directed to determine how much, if anything, is still due upon them ; and these must be tried in different forums. Even after this is done, if it should be ascertained that an overdue amount had been paid, it could not be recovered ; for neither upon the issues nor upon the writs of *sci. fa.* could the defendant in the judgment obtain a certificate of an amount due him from the plaintiff. Harper *v.* Kean, *supra.* In that event separate actions would have to be instituted for the recovery of the amount overpaid ; and after all was done, in order to finally close the litigation, a bill in equity would lie to compel the delivery of the notes given to secure usurious interest. Eckman *v.* Eckman, 5 S. M. 269 ; Wilson *v.* Getty, 7 S. M. 271 ; Morris' App. 18 S. M. 16. Thus to accomplish what could be done under this bill—if the equities should justify such a decree—the complainant would be driven to adopt a variety of remedies in two different courts ; and still for want of a jurisdiction that could attach to the entire financial transactions between the parties, encounter legal risks and hazards highly prejudicial to his interests.

Equity, however, abhors continuous litigation and a multiplicity of suits ; and will intervene for the prevention of these evils. Big Mountain Im. Co. App. 4 P. F. S. 372 ; Hilliard on Inj. § 41, 46 ; 2 Story's Eq. 864.

It is apparent, therefore, that if the plaintiff has remedies at law, they are not so complete and adequate as in equity. The mere fact that there is a remedy at law—unless that remedy is as complete and ample as that which can be decreed upon, the bill will not oust the jurisdiction of a court of equity. Kirkpatrick *v.* McDonald, 1 J. 393.

3. But it is said that it is not within our power to restrain the carrying on of an action at law based upon a statutory right, such as a *sci. fa.,* to revive a judgment. This point is met and answered by Wister *v.* McManes, where the plaintiff in the judgment was enjoined against proceeding upon a *fi. fa.* for the collection of a judgment taken to secure a usurious contract. This ground of demurrer is therefore ruled adversely to the defendant. It is said that C. J. Thompson dissented, and that this court should not be bound by the ruling. It is true that in the annals of of our jurisprudence the late chief justice has left *clarum et venerabile nomen ;*

yet his dissents do not constitute judgments; and the opinion of Mr. Justice Strong vindicates the correctness of the conclusions reached. The doctrine laid down is not novel; nor is it peculiar to our system of equity jurisprudence. 5 John's Ch. Rep. 122. No matter what is the form, equity will look at the purpose for which it is used, and the object which is sought. It is upon this principle that the creditor of the husband is enjoined from selling the wife's separate property to pay the debt of the husband. Lyons' App. 11 P. F. S. 15; Hunter's Appeal 4 Wh. 16, and Big Mountain Im. Co's App. *supra.*

Whatever is inequitable, which at the same time is contrary to law, for which there is no adequate remedy at law, and which is prejudicial to individual rights, whether sought to be accomplished by legal means or legal process, is subject to the restraining powers of a court of equity, unless excluded by special statute. Stockdale *v.* Ullery; Wister *v* McManes *supra.*

It is said, however, that this case differs from Wister *v.* McManes, inasmuch as in that case the defendant in the judgment had no day in court. It might be answered that as to the pay of the original premiums the plaintiff here had no such day. But the reason for intervention was, that the contract sought to be enforced by the *fieri facias*, was usurious. Such is the case here, which is stronger in that there are two judgments subject to be examined in different forums; and no tribunal, other than a court of equity can in this case grasp the whole subject matter, while in the case cited, the whole contest was in but one forum.

It is impossible to resist the conclusion that the reasoning of Judge Strong in Wister *v.* McManes is decisive of this demurrer; and it so completely vindicates itself that a bare reference to it is sufficient.

It is finally urged, that inasmuch as the usurious payments have all been made for more than six months last past, and no action having been instituted for their recovery within that period, the question of usury is out of the case, and that the only basis of equity jurisdiction is gone. But this reasoning, although ingenious, cannot avail the defendant here. It has been met and answered in Keath *v.* Page, 13 P. F. S. 121.

It is evident from this reasoning that the demurrer must be overruled.

The case, therefore, will be heard upon bill and answer; and in view of this result it seems proper to say that no opinion has been formed by the court, nor do we now intend to express any, upon the merits. We have not considered the answer, nor has anything been said with a view to any fact or principle of law, averred or suggested by that answer.

And now, February 1, 1873, the demurrer is overruled.

*Mulvany & Lenzey* for demurrer; *C. F. Miller & Boyd* contra.