HELOISE KELLER, EXECUTRIX OF CHARLES M. KELLER, DECEASED, AND HENRY WATERMAN, RESPONDENTS, v. THE WEST, BRADLEY & CARY MANUFACTURING COMPANY, APPELLANT.

*Right of an executor of a deceased trustee to enforce a right of action existing in his favor — liability of the successor of a firm upon its sealed obligations — within what time they may be enforced — the statute does not commence to run until the payment is due — when a referee may disregard the evidence of an interested witness — a stockholder of a corporation cannot testify in its behalf as to a personal transaction with the plaintiff's testator — Code of Civil Procedure, sec. 829 — how far the succession to rights imposes covenant obligations associated with such rights.*

This action was commenced August 22, 1878, by the plaintiff, as the executrix of one Keller, to recover royalties for the use of a patented process for hardening and tempering wire, which it was claimed the defendant corporation was bound to pay under a sealed agreement entered into in November, 1865, between the said Keller and the firm of West, Bradley & Cary. By this agreement the said firm agreed that they would on or about the tenth day of each and every month render a true and faithful account of the number of pounds of iron wire hardened and tempered in their establishment during the preceding month, and that they would pay to Keller or his legal representatives, or to his or their order, one cent for each and every pound of wire so hardened and tempered within ten days after the time of making such return. The assignment of the letters patent had been made to Keller, in trust, to enable him to grant licenses to per-

sons desirous of using the invention, and to collect and pay over the royalties to one Waterman, who was joined with the executrix as party plaintiff in this action.

Under the said agreement the firm of West, Bradley & Cary used the invention, made the returns and paid the amounts required thereby until the close of the year 1867, when it was dissolved    In January, 1868, four of the five members of that firm formed the defendant corporation which, from that time until October, 1871, used the invention, making the returns and payments as provided in the agreement.    From the 1st of October, 1871, to August 24, 1872, the defendant made no returns, and refused to do so, although it continued to make use of the invention.    The defendant entered into no written contract or obligation, assuming the performance of the aforesaid agreement made with the firm, but it took the business of the firm with all its property, rights and obligations, and assumed its liability to perform such obligations.

*Held,* that as Keller had the title to the letters patent as a trustee of an express trust, within the meaning of section 449 of the Code of Civil Procedure, and as he died, prior to the passage of chapter 185 of 1882, the right of action then existing in him passed to his executrix.

That the right of the plaintiff to recover the royalties for the use made of the invention for the period extending from October 1, 1871, to August 24, 1872, was not barred by the statute of limitations.

That the action could not be treated as an action upon covenant, but must be maintained, if at all, upon the ground that the defendant agreed, by an unsealed contract, to perform the agreement and pay the royalties.    (Per DANIELS, J.)

That so regarding it, the action was not barred by the six years' statute, for the reason that, as by the terms of the agreement the payments were not to be made until ten days after the return for the preceding month had been made, the failure of the defendant to make any return prevented the running of the statute.    (Per DANIELS, J.)

That as the defendant was the successor of the firm and had succeeded to the rights secured by the covenant, which was still existing, and had acted under it, it became at once invested with and surrounded by the rules governing the covenant, not only as to its obligation, interpretation and construction, but also as to the rules prescribing the time within which proceedings to enforce any liability incurred thereunder might be commenced.    (BRADY, J.)

The referee found that the defendant agreed to perform the agreement made by the firm and pay the royalties to Keller.    The president of the company had been examined as a witness and denied that any such agreement had been made.

*Held,* that the witness was so clearly identified in interest with the company as its president and a stockholder thereof, as to authorize the referee to reject his evidence as not reliable when it appeared to be inconsistent with the conceded facts and circumstances of the business.

That as a stockholder of the corporation, the witness was interested in the event of the action so as to render his testimony as to any personal transaction or communication with the deceased trustee inadmissible under section 829 of the Code of Civil Procedure.

APPEAL from a judgment, entered upon the report of a referee.

It appeared that the plaintiff, Henry Waterman, had received letters patent from the United States for a process of hardening and tempering wire. He assigned his right, title and interest, derived from such letters, to Charles M. Keller, in 1865. The assignment to Keller was in fact in trust to enable him to grant licenses to persons desirous of using the invention, and to collect royalties for such use and pay them over to the plaintiff Waterman. After the assignment to Keller, and in November of the year 1865, he entered into an agreement with several different parties, including the firm of West, Bradley & Cary, by which they and their successors were licensed to use the patented invention upon payment of certain royalties for that use. The parties so licensed jointly and severally agreed that they would on or upon the tenth day of each and every month render a true and faithful account, under oath, of the number of pounds of hoop skirt and other wire hardened and tempered in their establishment during the preceding month, and that they would pay to Keller, the testator, or his legal representatives, or to his or their order, one cent for each and every pound of wire so hardened and tempered, within ten days after the time of making such return. Under this agreement the firm of West, Bradley & Cary made use of and enjoyed the advantages of the invention until the close of the year 1867, when it was dissolved. During that time they made their returns and paid the amounts as stipulated to the testator for the benefit and use of the patentee. At the expiration of that time and in the month of January, 1868, the present defendant was formed as a manufacturing corporation. The firm of West, Bradley & Cary consisted of five members at the time of its dissolution, one of whom retired and the other four associated themselves together and formed the corporation which is the defendant in this action. From the time of its formation until the month of October, 1871, it made use of the patented invention in the same manner as it had previously been used by the firm, and the officers of the corporation made returns under oath, as the agreement had required the firm itself to do of the quantity of wire manufactured by it. Those returns were delivered to the testator and in part to the plaintiff Waterman, and the license fees of royalties agreed to be paid for the use of the invention, were paid over

upon the basis of such returns by the defendant. But from the 1st day of October, 1871, until the 24th day of August, 1872, no returns were made to either the plaintiff or the testator, of the wire manufactured by the defendant. The defendant, however, during that interval of time continued to make the same use of the invention that it had previously made of it, and which was made of it by the firm of West, Bradley & Cary before the corporation was formed. It was not shown that the license issued to the preceding firm was in form assigned or transferred to the defendant. This action was commenced on August 22, 1878, for the recovery of the license fees accruing between the 1st day of October, 1871, and the 24th day of August, 1872.

*Francis C. Reed,* for the appellant.

*Charles D. Adams,* for the respondents.

DANIELS, J.:

The judgment or decision made in the action directed an accounting by the defendant of the royalties for wire hardened and tempered by it, from the 1st of October, 1871, to the 24th of August, 1872, by the use of a patented invention made by I. Washburn and P. L. Moen, and assigned in trust to the testator. The action has been before this court on a previous occasion, and in its controlling features does not very materially differ from the case as it was then made to appear.

Before this corporation was formed, the copartnership firm of West, Bradley & Cary were engaged in the same business, and an agreement was made between them and the testator on the 1st of November, 1865, under which they were permitted to use the patented invention, and for that use this firm agreed to pay one cent for each and every pound of wire hardened and tempered by the use of this patented invention. They further agreed that during the unexpired term for which the patents had been granted, they would render a true and faithful account under oath of the number of pounds of hoop-skirt and other wire hardened and tempered by them through the invented process ; that the account should be rendered on or before the tenth day of each and every month, and " that the payment shall be made within ten days after the making of such return."

This firm continued to use the invention until four of its five members united in organizing the defendant as a corporation to carry on the same business. This was done in the latter part of January, 1868. The defendant then succeeded to the property, business and interests of the firm, and continued to carry it on to the time of the commencement of this action, on the 22d of August 1878. For the wire hardened and tempered by the company under the patented process, returns were made according to the agreement entered into between the testator and this preceding firm. That continued to be done to the 30th of September, 1871, and payments of the royalties were from time to time made, according to the statements contained in the returns. But from the 30th of September, 1871, to the 24th of August, 1872, the defendants made no returns of the use of the patented invention, and refused to do so, although it continued to make use of it in the transaction of its business. After that time the invention was used under another agreement made between the defendant and the plaintiff Waterman, as the owner of the invention.

It has been urged, as it was when this action was previously, before the court, that it cannot be maintained by the executrix of the deceased testator. But it is very clear from the transfer of the invention made to him that he held the title to it as a trustee of an express trust, for the unexpired terms for which the letters patent had been granted, and as such trustee an action might have been maintained in his name for the recovery of these royalties, for the benefit of the persons entitled to receive them from him, under section 449 of the Code of Civil Procedure. Upon his decease, which preceded the enactment of chapter 185 of the Laws of 1882, the same right of action vested in the testatrix (*Wetmore* v. *Hegeman*, 88 N. Y., 72), and the action to recover these royalties was therefore well brought in the name of the executrix, and her right to maintain it was in no manner qualified by the circumstance that Waterman himself, who seems to have been the owner of the invention, was joined as a party plaintiff with her.

The agreement with the firm of West, Bradley & Cary for the use of the invention was subscribed in their firm name, to which was added a seal, and for that reason it has been urged that the defendant, succeeding to their rights and interests, and assuming

their obligations, became bound to account for the royalties in controversy, according to the terms of this agreement as a covenant. And an opinion that such a liability would arise was expressed in *Bommer* v. *The American Spiral Spring Co.* (44 N. Y. Sup. Ct. Rep. [12 J. & S.], 454, 462). But the point was not made the subject of any extended examination in that case. It was rather passingly assumed to be the law without examination. But the opinion which was then expressed upon this point does not seem to be warranted by authority, even if such an execution of the agreement by the firm could be held to create a covenant on its part. One member of a copartnership firm has legally no authority as such to subscribe the firm name to an agreement under seal. (Parsons on Parts., 178 and 180, note J; *Skinner* v. *Dayton*, 19 Johns., 513.) It is true where that may have been done by one of the members of the firm the act may be ratified and adopted by the others in such a manner as to make the instrument the covenant of the firm. (*Smith* v. *Kerr*, 3 Comst., 144, 150.) But while the firm continued during its existence to perform the stipulations contained in the agreement, it was not shown that either of its members ever took such action as to ratify the addition of the seal to the firm name affixed to the instrument. The seal was for no purpose necessary in the execution of this agreement. It would have been equally as effectual and operative by the simple subscribing of the partnership name to it, and where that is the legal character of the instrument, the seal may be rejected as surplusage. (Parsons on Parts., 183, note M; *Everit* v. *Strong*, 5 Hill, 163.)

But it is not necessary to fully determine these points for the disposition of this case. For in succeeding to the rights, interests and obligations of the firm, the defendant entered into no written agreement or obligation whatever assuming the performance of this agreement. The most that it can be held to have done, was to take the business of the firm with all its property, rights and obligations, and to have assumed the liability on its part to perform such obligations. An agreement on its part to that extent is plainly inferable from the manner in which it succeeded to the business of the firm, and afterwards carried it on and observed and performed its obligations. And that agreement was what the law would designate as a simple contract on its part and not a covenant.

The case of _Atlantic Dock Company_ v. _Leavitt_ (54 N. Y., 35) does not reequire the adoption of any different conclusion. For there the party proceeded against was a party to the deed and by a covenant inserted in it assumed the performance of the obligation which was the subject of the action, and the deed itself concluded with the statement that the party of the second part had set his hand and seal to the deed. It was therefore held, inasmuch as he had entered into the enjoyment of the property designed to be conveyed, and had in this manner adopted the seal affixed to the instrument, that he was estopped from denying it to be his seal and was accordingly bound by the covenant on his part contained in the deed.

There was no such state of facts in this case. For, as before observed, the defendant entered into no sealed or even written obligation for the observance or performance of the agreement made with the preceding firm. And where that has not been done, the party acquiring the rights secured to another, by means of a preceding covenant, cannot be proceeded against upon the mere force or effect of the covenant itself, but if liable at all, must be made liable upon the force and effect of his or its own obligation, being, as it was in this case, that of a simple contract. This subject, to some extent, was considered in _Gale_ v. _Nixon_ (6 Cow., 445). The instrument then in suit was indorsed and sealed in the firm name of the defendants by one member of the firm, and it was held that an action of covenant could not be maintained against them upon it. But it was stated in the course of the opinion of the court that "Assumpsit was the proper form of action. Covenant will lie only where the instrument is actually signed and sealed by the party or by his authority." (Id., 448.) _Hanford_ v. _McNair_ (9 Wend., 54), maintains the same general view.

The action, if it can be maintained at all, can be maintained against the defendant upon the sole ground that it undertook and agreed, by an unsealed contract with the preceding firm, to perform this agreement and to pay these royalties to the testator. And that such an agreement was made, or understanding entered into, was found as a fact by the referee before whom the trial took place. And it could be well found from the circumstances that the defendant was the successor of the preceding firm, and in that character

acquired all its property and generally assumed its obligations, and for a series of years performed this particular agreement according to its terms with the testator. This was denied by the witness Joseph I. West, president of the company. But the referee was not bound to accept this denial or his statements relating to this subject as the truth of the case. For he was a person so clearly identified in interest with the company as its presiding officer and a stockholder as to leave the referee at liberty to reject his evidence as not reliable when it appeared to be inconsistent with the conceded facts and circumstances of the business. (*Elwood* v. *Western Union Telegraph Co.*, 45 N.Y., 549, 553, 554.) And it seems to have been so considered and disposed of by the referee. It is therefore to be assumed, as it was upon the preceding decision of the case, that the defendant had entered into an agreement certainly to be implied from the circumstances, to pay the royalties reserved by the testator in his agreement with the preceding firm, and it was therefore liable for the royalties, payable for the use of the invention, from the 30th of September, 1871, to the 25th of August, 1872. Although it refused to make any returns or statements of the extent of its use of the invention, it at no time repudiated the agreement or declined to accept its advantages ; but as the evidence established the fact, it continued the use of the invention with the consent, allowance and license of the testator, and for that it would be liable to make compensation, even though it had not in fact assumed the performance of this agreement. (*Rider* v. *Union India Rubber Co.*, 28 N.Y., 379.) But that was not necessarily the theory of the plaintiff's action. It was that the defendant had in fact become bound to fulfill the obligations of the firm for the performance of this agreement, and that was the view adopted by the referee in making his report, and in adopting it he was well sustained by the proof produced before him on the trial of the action.

But as the defendant cannot be held to be liable upon the agreement of the firm as a sealed instrument, it is objected that the referee erred in directing it to account and pay for the royalties accruing for the use of the invention, as he did, from the 1st of October, 1871, to the 24th of August, 1872. But that does not follow, for the plaintiff was clearly entitled to prosecute and main-

tain the action, under sections 380 and 382 of the Code of Civil Procedure, requiring such a suit to be commenced within six years after the cause of action had accrued, and this action was brought within that time, for the proof showed and the referee found that the defendant did not make any of the monthly returns mentioned in the agreement during this period of time. This omission to make such returns seems to have been a conceded fact in the case, and still it continued in the use and enjoyment of the rights and privileges secured by the invention under the license of the testator to the firm. This omission of the defendant to render monthly accounts prevented the running of the statute against its obligation to make the payments within ten days after making the returns, for as no returns were made this period of ten days was not set in motion. It was at no time commenced, and could not be under the agreement as long as the returns were not made. If the agreement had contained the obligation that the return should be made on the tenth of the month, and the payments on the twentieth of each month, the case might very well have been different. But it was not, for while the obligation was created to render the accounts on the tenth of every month the obligation to pay was explicit that the payment should be made within ten days after making the returns; and as no return was made up to the 24th of August, 1872, or indeed at any time after that, the action could well be commenced within six years after that date, for up to that time the testator was not in a position, by reason of the default of the defendant in making the returns, to enforce the immediate payment of the royalties. The precedent act to that right had not been performed by the defendant, and the contract required such performance to ascertain the amount and extent of its obligation, and after that was done the testator had ten days to require the payment of the amount. The referee was, therefore, right in requiring by his decision that the defendant should still account for and pay these royalties.

During the trial various questions were asked of the witness West which, upon the objections of the defendant's counsel, he was not then permitted to answer. But as to those which were first put to the witness he did afterwards give his evidence, fully and substantially answering such questions. This evidence was followed by other questions intended to disclose conversations and transactions

had between the witness and the testator, and upon its appearing that he was a stockholder in the corporation, he was held to be incompetent to answer such questions under section 829 of the Code of Civil Procedure. This section has provided among other things that a person interested in the event of the action shall not be examined, concerning a personal transaction or communication between himself and a deceased person, in an action where his executor may be a party. And as a stockholder in the corporation this witness was interested in the event of the action and within the prohibition of this section. For it is entirely evident if the action could have been defeated by the evidence proposed to be given, that he would correspondingly profit by the result in the increased dividends which would be made upon his stock. He had in this manner a direct and certain interest to be promoted by his testimony, and for that reason it was not competent for him to relate what had been said and done between himself and the testator. It has been said that the true test of the interest of a witness, is whether he will gain or lose by the legal operation and effect of the judgment, and if he will the extent of his interest is not important. That fact will render him an interested witness in the action. (1 Greenlf. on Ev. [11th ed.], §§ 390, 391.) And that a stockholder in a private corporation (except banks, as section 829 has been amended), entitled to dividends upon his stock has this interest in a litigation for or against his company that may result in a judgment for the payment of money either to or by it, has been held in adjudged cases. (*Grayble* v. *York, etc., T. Co.*, 10 Sergt. & Rawle, 269, 273; *Crozer* v. *Leland*, 4 Whart., 12; *Eustis* v. *Parker*, 1 N. H., 273.) And it follows that the witness was not competent to give this evidence from the rule already mentioned, which is further sustained by *Marquand* v. *Webb* (16 Johns., 89); and *Ten Eyck* v. *Bill* (5 Wend., 55).

The referee was right, therefore, in excluding the answers to the questions inquiring concerning transactions and communications between the witness and the testator, Neither of these points nor any other taken in behalf of the appellant, will sustain this appeal, but the judgment directed by the referee appears to have been right and legal, and it should be affirmed, with costs.

BRADY, J. :

The questions presented on the appeal, to which it is considered necessary to refer, with two exceptions which have been considered, have been passed upon by the former appeal herein. (See opinion DANIELS, J.) The right of Mrs. Keller to appear as a plaintiff was expressly declared, and is not, therefore, a subject for disputation. The obligation assumed by the defendant upon using the plaintiff's patent was also stated, and, therefore, adjudicated. The defendant succeeded to the rights of the licensees West, Bradley & Cary, whose business they purchased, and who were to pay a royalty under a covenant. The defendant paid according to the terms expressed in it, conforming for a time, at least to them in all respects, and omitting to do so for the period mentioned in the complaint, only because, giving the defendant's best reason, the obligation was supposed to have been arrested by the neglect of the licensor to prosecute for or arrest sales of the patented article, alleged to have been made by others, which, by the covenants and its benefits, the defendants had the exclusive right to make.

This feature of the controversy was also considered and disposed of unfavorably to the defendants by this court, on the ground that the facts shown did not establish the charge made or impose such a duty. The evidence taken and spread upon the record now does not call for a different view of the obligations of the parties in this respect, and upon the main issue the defendants must be regarded as defeated and liable, unless the evidence excluded for the reason that the plaintiff, Mrs. Keller, was the executrix of the licensor was error, or the statute of limitations had applied to the cause of action for an account. The effort in reference to the first of these propositions was to prove statements, admissions or assertions of Mr. Keller, deceased, affecting the covenant or relations springing out of it in regard to the use or practice of the invention, and were properly rejected under section 829 of the Code of Civil Procedure. Although Mr. Keller was a trustee, the covenant was made with him, and his power to deal with the subject was full and ample. To have established a modification of the rigor of the covenant, or any of the relations arising from it between the defendants and him, would have been to have done so with the principal, for he was, in fact, the contracting party. The section referred to clearly covers such a relation.

In regard to the second proposition the rule to be declared is not so easy of solution. This court, on the former appeal, held that, as to the transactions in August, 1872, the statute of limitations had not applied, and, therefore, a cause of action existed. The plaintiff, however, insists that the action is one on covenant and can be maintained at any time within twenty years. There is great force in this although it may not be sustained by any authority expressly so holding. The action, it must be observed, is upon the covenant made with licensees, to whose business the defendant succeeded, and who, availing itself of the privileges of the license manufactured under it, sold the product, and accounted in accordance with its requirements. This is thought to bind it so that when any dispute arose the covenant must be resorted to, to ascertain and determine the difference. And this being so the covenant is the foundation for the controversy, invoking all the rules of law applicable to such an element. It has been held that a license need not be in writing, and an assignment of it, therefore, may be accomplished by parol and inferred from facts and circumstances and the assignee takes subject to the same liability as the licensor incurred. (*Marsh* v. *Dodge*, 66 N. Y., 533; Walker on Patents, § 310; *Goodyear* v. *Congress Rubber Co.*, 3 Blatch., 455.)

But it is not necessary to rely upon this rule alone for the defendant is, as already suggested, a successor. A railroad company formed by the consolidation of prior railroad companies may invoke the licenses which were given to either of its constituent corporations, because the consolidated company is a successor rather than an assignee of those companies. (Walker on Patents, *supra*, § 310.) As a successor its rights and privileges spring out of the covenant, if one exist, relating to the license, which is adopted and incorporated, and, therefore, becomes a part of the business and obligations of the successor. If any right be claimed and denied, resort must be had to it to determine it, and the benefits cannot be enjoyed without the assumption of the burdens. (*Goodyear* v. *Congress Rubber Co.*, *supra.*)

The defendant is the successor of the firm who were the licensees and acted under the license, conforming to its provisions at least for a time, and all privileges enjoyed under it were impressed with all the responsibilities which would have attached to its pre-

decessors if acting alone. It is thought, therefore, on principle that when parties succeed to the rights of another secured by covenant still existing, and act under it, they become at once invested with and surrounded by the rules governing the covenant, not only as to its obligation, interpretation and construction, but subject to the time within which proceedings to enforce any liability incurred may be commenced under the statute of limitations.

For these reasons the judgment should be affirmed, with costs.

DAVIS, P. J., concurred in the result.

Judgment affirmed, with costs.