the inspectors made a false certificate of that result, and if that is so a court of equity will afford plaintiffs a more speedy mode of relief than to compel them to go through the process of a resubmission at another town meeting.

I have examined with care all of the authorities cited by defendants in support of their proposition, but none of them go so far as to hold that the making of the final certificate of the result of the election is a part of the submission. The making of the certificate is something that occurs after the vote has been canvassed and the result ascertained. When the vote has been canvassed and the result ascertained, that concludes the submission of the proposition. Subsequently, when the inspectors come to certify the result, if they certify erroneously or falsely, a court of equity has power to and will afford relief, to the end that the decision of the electors, as expressed by their votes, shall not only be canvassed and ascertained but shall be correctly and honestly certified.

To adopt the theory of defendants and say that even if the question had been properly submitted, and that the election was in all respects fair and honest, and that the votes had been duly and properly canvassed and the result ascertained, that boards of inspectors by erroneously or falsely certifying the result contrary to what the votes cast actually show it to be, could thus nullify the action of the electors at a town meeting, and that persons aggrieved were without remedy in the Supreme Court, would be unfortunate indeed. What is wanted in this matter, as in all other similar controversies, is an honest election and an honest canvass of the vote, and then have the result correctly and honestly certified. Defendants' idea is that if all proceedings were regular excepting the making of the certificate and that was made falsely, parties claiming to be aggrieved are without remedy, excepting to resubmit the question to another town meeting. That is manifestly erroneous, for the time has not yet come when the Supreme Court is without power to right a wrong if the facts show that a wrong has been committed.

I am convinced that this court has ample jurisdiction of the subject-matter of this action, and that the complaint sets forth facts sufficient to constitute a cause of action, and the demurrer must be overruled.

Judgment is directed in favor of the plaintiffs on the demurrer, with costs, with leave to the defendants to withdraw the demurrer and answer the complaint within 20 days, on payment of costs.

---

(139 App. Div. 649.)

### BATELLE et al. v. MERCANTILE WAREHOUSE CO.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

1. WAREHOUSEMEN (§ 24*)—LOSS OF GOODS—BURGLARY—NEGLIGENCE.

The failure of a warehouseman to maintain an inside watchman or to maintain a burglar alarm is not sufficient to justify a finding of negligence making the warehousemen liable for the loss of the goods stolen, where a night watchman was employed in common with other merchants

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and warehousemen in the vicinity, and it was not customary to keep an inside watchman or burglar alarm.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 48–54; Dec. Dig. § 24.*]

2. WAREHOUSEMEN (§ 24*)—LOSS OF GOODS—BURGLARY—NEGLIGENCE.

That burglars secured entrance to a warehouse by going to the top of a tenement house adjacent thereto and driving spikes in the wall, climbed to the top of the warehouse, and battered down a door at the top of the elevator shaft, which was not locked from the inside, though nailed up from the outside, and stole goods therein, is not sufficient to charge the warehouseman with liability for the loss of the goods on the theory that they did not secure the building against forcible entry.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 48–54; Dec. Dig. § 24.*]

Appeal from Trial Term, New York County.

Action by Eugene Batelle and another partner against the Mercantile Warehouse Company. From a judgment for plaintiffs, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Frederick R. Graves, for appellant.
George Gordon Battle, for respondents.

MILLER, J.  This is an action to recover the value of certain goods, stored by the plaintiffs with the defendant for hire, and which were stolen by burglars. The plaintiffs specified three grounds of negligence: (1) That the defendant failed to employ any watchman; (2) that it did not maintain a burglar alarm in its warehouse; (3) that it did not properly secure the warehouse against forcible entry. It appeared that the defendant did employ a night watchman in common with other merchants and warehousemen in the vicinity of his warehouse, and that it was not customary for warehouses to employ any watchman on the inside or to maintain burglar alarms in their warehouses. We do not think that the failure to employ an inside night watchman or to maintain burglar alarms in the warehouse justified a finding of negligence, causing the loss complained of. It is evident that the plaintiff mainly relies upon the third ground specified.

The defendant's warehouse was 15 feet higher than an adjoining tenement house. The burglars secured entrance to the tenement house, and from the roof of the tenement house ascended to the roof of the defendant's warehouse by means of spikes which they drove into the wall of the warehouse. Upon the roof of the warehouse there was a small wooden structure over the elevator shaft, which was covered with tin and tarred over. There had once been a door in this wooden structure, which, however, had been nailed up and was fastened on the outside by a padlock. The burglars battered down this door and slid down the elevator cables to the top floor of the building. It is claimed that the defendant was negligent for not fastening the door of the elevator house on the inside; but it is difficult to perceive how that would have prevented burglars from knocking the door down.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Moreover, it seems to us that the defendant was not called upon to anticipate that burglars would gain entrance to their building in the manner disclosed.

The plaintiffs rely on the case of Faucett v. Nichols, 64 N. Y. 377. That was an action against an innkeeper for the loss of a guest's horses, carriage, and harness caused by the burning of the defendant's barn. At common law, the defendant was an insurer, but by statute was permitted to absolve himself from liability by showing that the fire was the work of an incendiary and occurred without his fault or negligence. There was evidence tending to show that the fire was the work of an incendiary, who gained access to the hay loft through a window opening into an alley, and that there was a pile of lumber under the window so that a person could easily climb upon it and enter the window. The court did say that that furnished some evidence of negligence; but it is to be noted that the judgment for the plaintiff in that case was reversed for errors in the exclusion of evidence. We think that that case is not applicable to the facts disclosed in this case.

To say the least, the burglary was an unusual one, and we think that the evidence fails to show that the defendant omitted any precaution which may reasonably be said to have furnished the occasion or opportunity for its commission.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

(139 App. Div. 428.)

### ALLEN v. GRAY et al.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

JURY (§ 13*)—RIGHT TO JURY TRIAL—EQUITABLE ACTION—ACTION BY TRUSTEE IN BANKRUPTCY TO AVOID FRAUDULENT TRANSFER.

　　Since Bankruptcy Act (Act July 1, 1898, c. 541, § 70e, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3452]), providing that the trustee may avoid any transfer by the bankrupt which any creditor of such bankrupt might have avoided as fraudulent, provides no form of action by which the trustee is to enforce such right, he is limited to the form of action by which creditors must enforce similar rights, and the action is in equity, and plaintiff is not entitled to a jury trial; that the complaint demands judgment for a sum of money being immaterial.

　　[Ed. Note.—For other cases, see Jury, Cent. Dig. § 73; Dec. Dig. § 13.*]

　　McLaughlin and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by G. Edgar Allen, as trustee in bankruptcy, etc., against William H. Gray, as executor, etc., and John Boyd Gray, as administrator, etc., of Mary J. Gray, deceased. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

See, also, 63 Misc. Rep. 219, 115 N. Y. Supp. 928, and 123 N. Y. Supp. 1104.

---

*For other cases see same topic & § NUMBER in.Dec. & Am. Digs. 1907 to date, & Rep'r Indexes