[S. F. No. 7815.  In Bank.—October 1, 1918.]

EDGAR PERERA, Appellant, v. PANAMA–PACIFIC INTERNATIONAL EXPOSITION COMPANY (a Corporation), Respondent.

VERDICT—RIGHT OF COURT TO DIRECT.—The right of a court to direct a verdict is, with regard to the condition of the evidence, absolutely the same as the right of a court to grant a nonsuit.

NONSUIT—WHEN PROPER.—A court may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given.

BAILMENT—JEWELRY FOR EXHIBITION PURPOSES—DEGREE OF CARE.—An exposition company to whose care jewelry is confided for exhibition purposes and for sale on commission is not an insurer against theft, but is only bound to exercise ordinary care in the matter of protection of the exhibit against theft.

ID.—ACTION FOR LOSS OF JEWELRY—THEFT—LACK OF ORDINARY CARE—BURDEN OF PROOF.—Where in an action for the value of certain jewelry confided to the care of defendant for exhibition purposes and sale on commission it was shown by the plaintiff that the jewelry while so on exhibition was stolen by some unknown third party, it was incumbent upon the plaintiff, in order to make out a case, to introduce evidence from which the jury might legitimately infer that the theft was due to lack of ordinary care on the part of defendant.

ID.—CUSTOM OF JEWELERS.—In such action evidence as to the custom as to the care of jewelry among jewelers when being displayed for sale or exhibition is not competent on the question of exercise of ordinary care by defendant.

ID.—FAILURE TO SHOW NEGLIGENCE—DIRECTED VERDICT.—In this action it was held that the facts and circumstances shown by the evidence were not sufficient to support an inference of negligence, and that the court properly directed the jury to render a verdict for defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ambrose Gherini, and J. Edwin Lyons, for Appellant.

Brittain & Kuhl, for Respondent.

ANGELLOTTI, C. J.—This is an appeal by plaintiff from a judgment that he take nothing. At the close of the plaintiff's case the trial court directed the jury to render a verdict for defendant, and upon the verdict so rendered the judgment was given. The principal question on this appeal is as to the correctness of the action of the trial court in so directing the jury. It is now settled that the right of a court to direct a verdict is, with regard to the condition of the evidence, absolutely the same as the right of a court to grant a nonsuit; and also that a court may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given. (*Estate of Caspar,* 172 Cal. 147, [155 Pac. 631].)

The action was for the value of certain jewelry, worth, according to plaintiff's testimony, between ten thousand dollars and fifteen thousand dollars, confided with other jewelry by plaintiff to the care of defendant for exhibition purposes and sale for him by defendant on commission, at the Panama-Pacific International Exposition, and which was never returned or accounted for. There was here a bailment for the mutual benefit of the parties. The evidence introduced on behalf of plaintiff showed that while so on exhibition the jewelry was stolen by some unknown third party. It is conceded by plaintiff that under the circumstances it was incumbent on him, in order to make out a case, to introduce evidence from which the jury might legitimately infer that the theft was due to lack of ordinary care on the part of defendant. (See *Colburn* v. *Washington State Art Assn.,* 80 Wash. 662, [L. R. A. 1915A, 594, 141 Pac. 1153]; 6 C. J. 1158, 1159, 1160.) Defendant does not dispute that it was bound to the exercise of ordinary care in the matter of protecting the property of plaintiff from theft.

Viewing the evidence in the light most favorable to plaintiff's claim, as we must, the case made by plaintiff's wit-

nesses, so far as material, was substantially as follows: The jewelry was placed, according to the agreement of the parties, in the arts and crafts section in the Palace of Varied Industries. This building contained a floor space of about five acres, and the arts and crafts section comprised about five thousand square feet of this space in the northwesterly corner of the building. This section contained some other displays of valuable jewelry, as well as displays of other articles. There were many other sections in the building, some containing valuable exhibits. The jewelry of plaintiff was contained, as was the other jewelry exhibited in the section, in showcases. That of plaintiff was contained in two showcases, which, including the locks thereon, were furnished by plaintiff, through his own representative, one Gugliemetti, the defendant requiring only that the cases be uniform in color and design with the other cases in the same section. The section was in sole charge of defendant's employees, but plaintiff's representative, who visited the place occasionally, was cognizant of the manner in which the jewelry was placed and exhibited. On the evening of June 19, 1915, about 7:10 P. M., just before the closing of the building for the night and while patrons were still therein, the two locked cases were pried open at about where the locks thereon were placed, and a large portion of plaintiff's exhibit abstracted by the thief. There was an attendant of the section on duty at the time, and he was engaged for the moment with a customer. There is no suggestion in the evidence that he was in any way negligent. The locks on the cases were not of the best type, and the indications were that it was a simple matter to pry the cases open. Defendant's representative had accepted the cases as delivered, and had never investigated the locks. The regular guard force of the defendant for the exposition, which comprised some 625 acres of ground, consisted of three hundred trained men, who were assigned, as required, to particular places and buildings. Defendant had, in addition to this force, some Pinkerton private detective agents, whose duty it was to look out for suspicious characters in and about the buildings and grounds, and had also arranged with the city authorities for the presence on the grounds of "plain clothes men" of the police department for the same purpose. The force of regular exposition guards assigned to and on duty in the Varied Industries Building at the time of the

theft consisted of three, two guards and a corporal, the duty of each guard being to patrol one-half thereof, and that of the corporal "to supervise the . . . whole building." As we have seen, there was an attendant on duty in the section at the time of the theft, and there is no suggestion that this was not ordinarily the situation with regard to the other sections in the building. In addition to this some of those having very valuable exhibits in the building had their own private guards or watchmen. There was no burglar-alarm system in any portion of the building. Some nine or ten evenings before this theft the place was entered (whether after the building was closed for the night does not appear), and a case in this section opened and some jewelry stolen, but we have no evidence at all as to the circumstances under which this theft occurred.

We are unable to see in this evidence any substantial support for a conclusion that the theft was due to negligence on the part of defendant. In view of the evidence, the defendant was in no way responsible for the condition of the locks on the cases, or the facility, demonstrated by the theft, with which the cases could easily and quickly be pried open at the locks. There was, of course, no showing of negligence on the part of defendant in the evidence as to the manner in which the jewelry was placed and kept on exhibit. As said by counsel for defendant, "the very nature of the bailment was such that the goods were to be kept so that the public might very readily see and examine them." And plaintiff, through his representative, knew exactly how his property was being kept and displayed, in the cases furnished by him. There is nothing in the evidence reasonably warranting a conclusion that the representative of defendant in charge of this section at the time of the theft was guilty of any lack of ordinary care, or that the defendant was negligent in not having more than one attendant in the section. The real contention of plaintiff is that there was lack of ordinary care in the matter of police protection for the exhibits contained in this building. The evidence introduced by him showed that defendant did furnish in various ways police protection for the exhibits at the exposition, including those contained in this building, and we find in the evidence no sufficient gauge by which it may fairly be concluded that the police protection so furnished was not reasonably adequate; that is, that it was less than a reasonable

man, in view of all the circumstances, would deem essential to the proper protection of the various exhibits. Of course, as is conceded, defendant was not an insurer against theft. It could not be expected, in the very nature of things, to have the articles exhibited by plaintiff under the observation of some guard or other employee every moment of the time. The limit of its obligation in this behalf was to exercise ordinary care in the matter of the protection of this exhibit in common with all other exhibits, against theft. The evidence that there were only three regular exposition guards on duty at the time in this building must be considered in connection with the evidence to the effect that the building was still open for business; that there were patrons therein; that there was an attendant on duty in special charge of this section in which plaintiff's jewelry was contained in locked cases; that so far as appears there were special attendants in other sections; and that special provision had been made in the way of "plain clothes men," both Pinkerton men and San Francisco police officers, to guard against the presence on the grounds of known criminals and suspicious characters. There is no sufficient data upon which one may reasonably conclude that the provision made for protection of the exhibits was not reasonably adequate. With the limited evidence as to the conditions and circumstances which is contained in the record, it seems to us that any conclusion of want of ordinary care in the matter of police protection would be one based solely on mere conjecture or surmise. The prior theft is of no practical importance in this connection, in view of the want of evidence as to the circumstances thereof. The burden was on plaintiff to affirmatively show negligence. It is true, of course, that evidence of facts and circumstances from which want of ordinary care may reasonably be inferred is sufficient to support a conclusion of negligence, in which event the question of negligence is one for the jury. But the difficulty here is that the facts and circumstances shown by the evidence furnish no sufficient basis for any such inference. This being the condition of the proof, the trial court properly directed the jury to render a verdict for the defendant.

It was claimed in the opening brief of appellant that the trial court erred in refusing to allow an expert jeweler called by him as a witness to testify as to the custom as to the care of jewelry among jewelers when being displayed for sale or

exhibition. The sole object of this proposed evidence, as stated by counsel, both in making his offer and in his brief, was to show what protection is given by jewelers to jewelry displayed for sale or exhibit for the purpose of establishing what amount of protection was essential to the exercise of ordinary care by defendant. We do not see how any such custom could be binding on defendant, or competent on the question of exercise of ordinary care.

The judgment is affirmed.

Shaw, J., Sloss, J., Wilbur, J., Lorigan, J., Melvin, J., and Richards, J., *pro tem.*, concurred.