[Civ. No. 4626. First Appellate District, Division One.—February 28, 1924.]

## CHARLES S. WEBBER, Respondent, v. BANK OF TRACY (a Corporation), Appellant.

[1] BANKS AND BANKING—RENTER OF SAFE-DEPOSIT BOX—BAILMENT—CARE REQUIRED.—The relation between a bank maintaining safe-deposit boxes and a person renting one of such boxes is that of bailor and bailee, the bank being a bailee for hire, and it devolves upon it to use ordinary care in the safeguarding of the bailor's property, but it is not an insurer.

[2] ID.—ORDINARY CARE—INSURER AGAINST THEFT.—In the absence of any stipulation between the parties, the limit of a bailee's obligation is the exercise of ordinary care, and he cannot be said to be an insurer of the property against theft, if he has exercised such care.

[3] ID.—ORDINARY CARE—ATTENDANT CIRCUMSTANCES—CUSTOM.—In general a bailee is required to exercise that degree of care which an ordinarily prudent person bestows upon his own property of a like description. The standard of ordinary care must, of necessity, vary with time and place, since what might be ordinary care at certain times and in certain localities might, at different times and at other places, amount to but slight care; and the influence of custom and business must also be considered in determining what is ordinary care, as in certain businesses or trades disposition may be made of property or goods by a man of ordinary prudence which, under other circumstances, would certainly be open to the charge of gross negligence.

1. Mutual rights and liabilities of owner and lessee of safe-deposit boxes, notes, Ann. Cas. 1912B, 441; Ann. Cas. 1918C, 910.

[4] Id.—Conformity With Other Banks.—The ordinary care required of a bank doing a safe-deposit business is that the construction of the bank building and the methods of protection and the general conduct of its business should conform to those of banks in similar communities.

[5] Id.—Negligence—Burden of Proof.—In an action by a renter of a safe-deposit box, against the bank, to recover the value of the contents of the box, which was burglarized, it is incumbent upon plaintiff to sustain the burden of proving the charges in his complaint that the bank was negligent and that it failed to use ordinary care in safeguarding the property.

[6] Id.—Combined Circumstances—Negligence—Proximate Cause. In this action by a renter of a safe-deposit box, against the bank, to recover the value of the contents of the box, which was burglarized, the combination of circumstances such as no telephone system, inadequate locks and eye-bolts on back door, inadequate street lighting system, frosted windows, grill work, obscuring the view of vault door, shades on windows, noise of passing trains and the like, furnished no sufficient basis for any inference of negligence; but, even though such combination of circumstances be deemed negligence, it could not be maintained that such negligence was the proximate cause of the burglary.

[7] Id.—Negligence—Pleading—Proof.—Negligence is always a question of fact to be alleged and proved as averred; and it cannot be supported by mere conjecture or surmise, but must be made referable to some specific cause or defect.

[8] Id.—Conduct of Average Prudent Man—Existence of Better Way.—No man is held by law to a higher degree of care than the fair average of his profession, business, or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in the bailee is the same, and however strongly they may be convinced that there is a better way, no jury can be permitted to say that the usual and ordinary way is a negligent way, for which liability shall be imposed.

[9] Id.—Standards of Business Customs—Province of Jury to Dictate.—While juries must necessarily determine the responsibility of individual conduct, they cannot be allowed to set a standard which shall, in effect, dictate the customs or control the business of the community.

[10] Id.—Burglary of Safe-deposit Boxes—Action Against Bank—Evidence—Verdict.—In this action against a bank to recover the value of the contents of certain safe-deposit boxes, which were burglarized, negligence was not inferable from the fact that the safe-deposit boxes were not kept behind a stronger door of a vault maintained by defendant; and plaintiff having wholly failed to af-

firmatively show negligence, whereas defendant showed by undisputed negligence that in maintaining its safe-deposit vaults it conformed to the practice and conduct of all other country banks in the state situated in towns of like population and character, the verdict of the jury in favor of plaintiff was not justified.

(1) 6 **C. J.**, p. 1122, sec. 61; 40 **Cyc.**, pp. 404, 429.    (2) 6 **C. J.**, pp. 1121, 1123, sec. 61.    (3) 6 **C. J.**, p. 1119, sec. 58.    (4) 40 **Cyc.**, p. 430.    (5) 40 **Cyc.**, p. 470.    (6) 40 **Cyc.**, p. 478.    (7) 6 **C. J.**, p. 1163, sec. 167; 29 **Cyc.**, pp. 587, 623.    (8) 29 **Cyc.**, pp. 426, 435, 589.    (9) 29 **Cyc.**, p. 636.    (10) 40 **Cyc.**, p. 478.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Reversed.

The facts are stated in the opinion of the court.

Crittenden & Hench, Creed, Jones & Dall and Esmond Schapiro for Appellant.

J. E. Rodgers and A. F. Bray for Respondent.

Morrison, Dunne & Brobeck, Edward Hohfeld and H. A. Judy, as *Amici Curiae.*

ST. SURE, J.—This is an action by plaintiff for himself and as assignee of twenty-one claims, against the Bank of Tracy, for the value of the contents of safe-deposit boxes, kept in the safe-deposit vault of the Byron Branch of said bank, which were burglarized on January 26, 1920. The complaint alleges that the bank was guilty of negligence and want of ordinary care in the protection of the safe-deposit boxes and the preservation of the property contained therein. After trial by jury a verdict was had in plaintiff's favor on eighteen claims, amounting to $12,322.14; from the ensuing judgment for that amount defendant appeals.

The facts are undisputed. The town of Byron, Contra Costa County, has a population of about 250 and is the center of a peaceful farming community. Its entire business section comprises a single street on the main line of the Southern Pacific Railroad. There is but one two-story building in the place, and all the buildings, with the exception of the bank, are of wood. Until 1911 there was no bank nearer Byron than at Antioch on the northwest about fourteen miles away, and at Tracy on the south, about

fifteen miles away; in 1911 the Bank of Tracy instituted a branch at Byron and assigned to it $25,000 working capital. The bank building was of concrete with eighteen-inch walls and the vault was constructed of the same material of the same thickness, with iron doors, "fire-proof and thief resisting." The front door and windows were of the ordinary business type. The rear door and window were protected by iron gratings. The grating over the rear door is described as a "barred door." It was made of iron and was a "lattice work hung by two hinges on two steel pins which were anchored in the cement wall. It was fastened . . . with a padlock on the inside of the grating." There was also a heavy wooden door across which on the inside was an iron bar. On either side of the bank building are wooden structures, and in the rear is a high board fence. A vacant lot adjoining the bank premises gave access to the rear of the bank building. Trees near said fence obscured the back door through which entrance to the steel vault doors was effected. No burglar alarm, bell or other warning device was installed in the bank. There was no watchman for the same; the only peace officer in the community lived on the same street as the bank and within sixty-five feet of it. From the front of the bank the upper portion of the vault door could be seen by looking through the window, over the top of grill work surmounting frosted glass and wooden base. The whole partition was probably five feet high. Several trains passed on the main line during the night, and there was generally some switching there also. The street lighting system of the town was by popular subscription, and as funds were low the lights were used only occasionally. There was no telephone service out of the town after 6 or 7 o'clock in the evening. No one slept in the buildings on either side of the bank. Defendant had rented yearly on an average of one hundred safe-deposit boxes at an annual rental of $2 per box, the total income therefrom approximating $200 per annum. Defendant was accustomed to, and did, on the night of the robbery, use one of the safe-deposit boxes for some of its own coin and Liberty Loan bonds. The safe-deposit vault was burglarized by unknown persons by the use of the oxy-acetylene torch and flame. With one possible exception this was the first bank robbery accomplished by such means in the United

States, but following in the same year there were four other similar bank robberies in California. The oxy-acetylene flame will cut through solid steel at least twenty-six inches thick. The precautions taken by the defendant for the safety of its box renters and the contents of such safe-deposit boxes were similar and at least equal to those taken by all other banks in similar and even larger communities in California. Up to the time of the robbery no bank in any community in California with a population of less than 1,000 had a burglar alarm on its safe-deposit vault or kept a private watchman.

Defendant alleges as its first point for reversal that the evidence is insufficient to justify the verdict on any count.

[1] The relation between these parties was that of bailor and bailee. The defendant was a bailee for hire. It devolved upon defendant to use ordinary care in the safeguarding of plaintiff's property. (*Cussen* v. *Southern California Savings Bank,* 133 Cal. 534 [85 Am. St. Rep. 221, 65 Pac. 1099].) [2] In the absence of any stipulation between the parties the limit of a bailee's obligation is the exercise of ordinary care, and he cannot be said to be an insurer of the property against theft, if he has exercised such care. (*Perera* v. *Panama Pacific International Exp. Co.,* 179 Cal. 63 [175 Pac. 454]; *Copelin* v. *Berlin Dye Works etc. Co.,* 168 Cal. 715 [L. R. A. 1915C, 712, 144 Pac. 961].) [3] In general it may be said that a bailee is required to exercise that degree of care which an ordinarily prudent person bestows upon his own property of a like description. The standard of ordinary care must, of necessity, vary with time and place, since what might be ordinary care at certain times and in certain localities might, at different times and at other places, amount to but slight care. The influence of custom and business must also be considered in determining what is ordinary care, as in certain businesses or trades disposition may be made of property or goods by a man of ordinary prudence which, under other circumstances, would certainly be open to the charge of gross negligence. Moreover, what would be the exercise of ordinary care with regard to articles of a certain kind, might be far from such with regard to those of a different sort. When one is wanting in the exercise of ordinary care he is said to be guilty of ordinary negligence.

**[4]** It would seem that the ordinary care required of a bank in a case like this is that the construction of the bank building and the methods of protection and the general conduct of its business should conform to those of banks in similar communities. (*Chilberg* v. *Standard Furniture Co.,* 63 Wash. 414 [34 L. R. A. (N. S.) 1079, 115 Pac. 837]; *Ketterer* v. *Armour & Co.,* 247 Fed. 921 [L. R. A. 1918D, 798, 160 C. C. A. 111]; *Battelle* v. *Mercantile Warehouse Co.,* 139 App. Div. 649 [124 N. Y. Supp. 135]; *Jones* v. *Hatchett & Brother,* 14 Ala. 743; *Bertha Zinc Co.* v. *Martin's Admr.,* 93 Va. 791 [70 L. R. A. 999, 22 S. E. 869]; *Pioneer Fire Proof Construction Co.* v. *Caroline Sandberg, Admx. etc.,* 98 Ill. App. 36; *Burns* v. *Sennett & Miller,* 99 Cal. 363 [33 Pac. 916]; *Hennesey* v. *Bingham,* 125 Cal. 627 [58 Pac. 200]; *Longuy* v. *La Societe Francaise,* 52 Cal. App. 370 [198 Pac. 1011].)

**[5]** Before proceeding with a consideration of the evidence we will advert to the charges made by plaintiff in his complaint against the defendant. It is alleged that the defendant was negligent and failed to use ordinary care in safeguarding the property. It was incumbent upon plaintiff to sustain the burden of proving these charges. As was said in *Perera* v. *Panama Pacific International Exp. Co.,* 179 Cal. 63 [175 Pac. 454], it was incumbent upon the bailor to introduce evidence from which the jury might legitimately infer that the loss or theft was due to the lack of ordinary care on the part of the bailee. An examination of the record discloses an utter lack of such affirmative proof. Plaintiff's counsel beg the question by arguing that "no care at all appears to have been used by the bank in safeguarding its safe depositors." We look in vain for the proof. Take, for example, the charges of omission made against defendant, such as the failure to install a burglar alarm or employ a watchman; there is no evidence to support the conclusion that either of such omissions was a negligent omission. The same may be said with reference to every other charge made by plaintiff. But, say counsel for plaintiff, "we do not contend that any one of these elements would necessarily in itself be conclusive upon the question of reasonable care, but we do contend that all of them taken together constitute a very strong case of gross negligence." A complete answer to this contention is that the evidence is as barren

of any proof which would support any "element" in plaintiff's case as it is with respect to the omission of the burglar alarm or watchman. **[6]** In this connection counsel call our attention to what they term a combination of circumstances such as no telephone system, inadequate locks and eye-bolts on back door, inadequate street lighting system, trees, and high board fence screening rear premises from observation, frosted windows, grill work, obscuring the view of vault door, shades on windows, noise of passing trains and the like. Such circumstances furnish no sufficient basis for any inference of negligence. Furthermore, even though such combination of circumstances be deemed negligence, it cannot be maintained that such negligence was the proximate cause of the burglary; the connecting links between the negligence and the burglary are wholly lacking. (*Union Investment Co.* v. *San Francisco Gas & Electric Co.*, 168 Cal. 58 [141 Pac. 807]; *Puckhaber* v. *Southern Pacific Co.*, 132 Cal. 363 [64 Pac. 480].) The view we have herein expressed upon the question of the proof of negligence is fully supported by the opinion of Mr. Justice Myers of the supreme court in the recent case of *Marovich* v. *Central California Traction Co.*, 191 Cal. 295 [216 Pac. 595].

Plaintiff cites a number of cases holding that one doing a safe-deposit business is a bailee for hire and is bound to use ordinary care, which is conceded. It is urged that the material facts in this case are in dispute and therefore the question of negligence was one for the jury. We have gleaned from the record and stated herein all of the facts. We accept the rule as stated in *Runkle* v. *Southern Pacific Milling Co.*, 184 Cal. 714 [16 A. L. R. 275, 195 Pac. 398], that "it is only when the facts of a given case are not in any event or in any view of the case susceptible of the inference of negligence sought to be deduced therefrom that the question of negligence becomes one of law for the sole consideration of the court rather than one of fact for the determination of the jury." It is apparent that counsel for plaintiff err in the application of this rule. **[7]** Negligence is always a question of fact to be alleged and proved as averred. It cannot be supported by mere conjecture or surmise, but must be made referable to some specific cause or defect. As was well said in *Perera* v. *Panama Pacific International Exp. Co.*, 179 Cal., at page 67 [175 Pac. 456],

"it is true, of course, that evidence of facts and circumstances from which want of ordinary care may reasonably be inferred is sufficient to support a conclusion of negligence, in which event the question of negligence is one for the jury. But the difficulty here is that the facts and circumstances shown by the evidence furnish no sufficient basis for any such inference." Negligence is not to be imputed from methods in general use in any business. The standard of ordinary care is established by competent testimony upon the custom and general usages of the business. Absolute protection against bank burglary, in small communities, is unattainable. Indeed, one witness, a safe manufacturer, said in this case "there is no such thing as a burglar-proof safe. . . . By theft-resisting I mean the safe gives reasonable protection." [8] No man is held by law to a higher degree of care than the fair average of his profession, business, or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in the bailee is the same, and however strongly they may be convinced that there is a better, no jury can be permitted to say that the usual way and ordinary way is a negligent way, for which liability shall be imposed. [9] Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set a standard which shall, in effect, dictate the customs or control the business of the community (*Bertha Zinc Co.* v. *Martin's Admr.*, 93 Va. 791 [70 L. R. A. 999, 22 S. E. 869]). Counsel for plaintiff would have defendant an insurer, which most emphatically it is not.

[10] Counsel for plaintiff further insist that negligence is inferable from the fact that the safe-deposit boxes were not kept behind a stronger door of a vault maintained by defendant. *Merchants Bank of Vandervoort* v. *Affholter,* 140 Ark. 480 [215 S. W. 648], is cited in support of such proposition. An examination shows that this was a case where Liberty bond subscription cards designating registered bonds, together with purchase price of bonds were deposited with the bank, the bank having ordered coupon instead of registered bonds, was liable to subscribers for money advanced, upon the theft of the bonds from the bank vaults, whether it was acting as agent of subscribers or as promoter

of loan drive, since having accepted funds for purchase of bonds it was responsible to subscribers either for return of money or for delivery of bonds designated in subscription contract. Here the bank had a special duty to perform and was entrusted with the money with which to purchase the bonds. It undertook to purchase the bonds and safely keep them. The case is not at all in point. Besides, in the instant case the facts show that defendant was accustomed to and did use the safe-deposit boxes for some of its own coin and Liberty bonds.

While plaintiff has wholly failed to affirmatively show negligence, defendant has shown by undisputed evidence, that in maintaining its safe-deposit vaults it conformed to the practice and conduct of all other country banks in California situated in towns of like population and character. Briefly, this evidence shows, without conflict or contradiction, that the bank building was as good or better than the ordinary country bank building in California; that the interior arrangement of the bank was the ordinary and usual arrangement; that the bank vaults were protected by doors similar in all respects to those in other banking institutions in California in similar sized communities; that no bank in California, up to the time of the robbery, in a community of less than 1,000 inhabitants, had either a night watchman or a burglar alarm.

Believing, as we do, that the evidence wholly fails to sustain the verdict, we are of the opinion that the judgment must be reversed. The order of the trial court taxing costs, made after judgment, from which the defendant also appeals, naturally falls with the main case. We consider it unnecessary to consider other points raised by defendant.

Judgment reversed.

Short, J., *pro tem.*, and Tyler, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 28, 1924.

All the Justices concurred.