[L. A. No. 19068. In Bank. Nov. 21, 1944.]

LETTIE DONAHOO, Respondent, v. KRESS HOUSE MOVING CORPORATION (a Corporation) et al., Appellants.

Frank W. Woodhead and Henry E. Kappler for Appellants.

Irving E. Read for Respondent.

THE COURT.—After hearing granted and oral argument the following portions of the opinion of the District Court of Appeal, Second District, Division Three, prepared by Presiding Justice Desmond, with some additional comment, constitute the opinion on which the decision in this case is based:

"This is an appeal from a judgment entered in favor of the plaintiff, Lettie Donahoo, against Kress House Moving Corporation and its vice-president, Edwin O. Egnew, in an action tried before a court without a jury.

"The locale of the accident resulting in the injuries for which judgment was awarded was the rear of a lot on the south side of Hollywood Boulevard a short distance east of Gower Street in the city of Los Angeles. This lot belonged

to a man named Mark Hansen and was of sufficient depth to warrant the moving of two houses located thereon to the rear of the premises, thereby making available as a used car lot the front of the premises. Hansen, on February 1, 1941, entered into a written contract with defendant corporation to move the buildings, which were respectively occupied by his tenants, Dr. Taylor and Miss Juanita Donahoo, an artist, whose 77-year-old mother, the respondent here, lived with her and kept house for her. The Donahoo house, smaller than the Taylor house, was moved first and placed upon a concrete foundation which had been prepared for it at the extreme rear of the property. The contract between the owner and the Kress House Moving Corporation contained as one of its provisions, the following: '(d) UNINTERRUPTED POSSESSION: To furnish and provide to the contractor at all reasonable times during the progress of the work whenever required in the performance of this contract by the contractor, an exclusive and uninterrupted possession of all the building or buildings and properties herein referred to, and to hold the contractor free and harmless at all times from any interference with such possession and occupation, as may be necessary to carry out the obligations of the contractor herein, and to hold the contractor free and harmless from all claims of third parties which may arise by reason of the doing by the contractor in a proper manner of the work herein agreed by him to be performed.' The occupants of the Donahoo house were permitted by the defendant corporation to continue their occupancy of the house during the moving operations.

"According to the defendant Egnew, who was in active charge of the work, his organization started moving the Taylor house on the 11th day of February, 1941, the Donahoo house having been lowered in the morning of that day upon its permanent foundation. Miss Donahoo testified that before the Taylor house was moved she saw the employees of the defendant corporation dig a ditch 'near the northwest corner of our house, as it is now located.' This ditch she described as being approximately seven or eight feet long and between three and four feet deep, located in an area immediately adjacent to the northwest corner of the Donahoo house. The court found that 'this hole ran from east to west, and was approximately a foot north of the front of the Donahoo house.' Miss Donahoo also testified that the workmen put some beams in the hole and a metal upright or stake to which a chain and

cable were attached. Other testimony showed that the hole, timbers, and metal stake formed what was known as an 'anchor' in house moving operations, and the timbers, being buried in the ground, were known as 'deadmen.' A new foundation was also constructed for the Taylor house but the work of placing it permanently upon that foundation was interrupted by winter rains and for approximately a fortnight after February 18, 1941, it rested on heavy timbers immediately above the concrete foundation.

"As the work progressed after February 1st, the front of the premises became littered with all kinds of equipment and machinery used in house moving and in concrete construction. Because of the great inconvenience involved in making her way out to Hollywood Boulevard by going to the north, Miss Donahoo resorted to a short cut, by which she obtained an exit to a paved driveway a few feet to the southwest of the northwest corner of her house. At that point two boards had been removed from a fence abutting on the paved driveway, by which easy access was had to Gower Street. Because of the muddy condition of the lot, the trip from the front of the Donahoo house to the paved driveway was made over small boards approximately one and a half feet long by six inches wide, laid end to end and bordering at one point upon the hole, above described, which, according to the findings of the court, the defendants 'neglected and failed to cover up or place a guard over or around the hole . . . so that it would be reasonably safe for plaintiff and her daughter to either walk over or around the same and out to the passageway in question.' The evidence does not disclose who laid the small boards in position but it appears clearly that Juanita Donahoo and a Miss Young, who was a close friend of her mother, frequently used the path formed by these boards. Mrs. Donahoo, however, had no occasion to use the path or to go to the driveway since she remained inside the Donahoo house during all the moving operations from February 1st to February 22d, the night when she suffered her injuries, with the exception of a single instance when she 'went out to get the mail, toward Hollywood.' On the evening of February 22d, she was expecting Miss Young to call upon her and undertook to light the way to and from the driveway by putting on the lights in two westerly bedrooms and the front porch. There were no back stairs available, the defendants having removed them

when moving the house and not having replaced them. Mrs. Donahoo decided that she would make her way to the fence corner, greet her friend and return with her to the house. She had no knowledge whatever of the hole having been dug but, undoubtedly, was familiar with the fact that her daughter and Miss Young had made use of the short cut above described. On the night in question she went from the house to the paved driveway about 7 o'clock and, meeting Miss Young at that point, turned about and preceded her toward the Donahoo house. She described her trip going from the house, as follows: 'I walked—stepping on these small boards, I came to a white board, a little board painted white, and I stepped on that, and then up on a beam, and then over onto another beam, and then to a sort of a cement coating, and then down on the cement—on cement paving.' On the trip back, toward the house, 'I stepped on the first beam with my right foot, after passing over the coping, and leaving the paving, I stepped on the beam—the first beam, with my right foot, and then over on the left beam with my left, and then down on this little white board with my right foot, which slipped into the hole or trench or whatever it was. I didn't see it before I slipped into it, or I never saw it afterwards; I never saw the hole.' She also testified that the force of the fall 'sent my body over the beam south, and the beam hit my knee, the sharp edge of the beam hit my knee, and I couldn't move.' While the night was described as 'dark' by certain of the witnesses, Mrs. Donahoo testified that she saw the beams and the little white board, saying, 'I stepped down on that little white board, because I could see that plainly.' Miss Young also testified that while she could not remember about the 'moon' she could see very well. . . .

"As a result of this accident Mrs. Donahoo was confined to her bed for a period of eight or nine weeks with her leg in a cast, then got about by means of crutches and a cane for a period of approximately a year after the date of her fall.

"Appellants make no complaint with reference to the amount of the award made by the court, but contend that the evidence is insufficient as a matter of law to support the judgment; that it does not justify the findings of fact and conclusions of law made by the court, and that the plaintiff was guilty of contributory negligence as a matter of law. It is also claimed that the negligence, if any, of the defendants was not the proximate cause of the injuries sustained by the plaintiff:

"As to the findings it may be said that many of the details covered in the foregoing recital appeared therein, and to us they furnish adequate support for the conclusions reached by the court, as follows: (1) That the defendants had uninterrupted possession of the property at the time of the accident and that the plaintiff was, both prior to and at the time of her accident, an invitee of the defendants. (2) That it was the duty of the defendants to provide a reasonably safe passageway on the said property for the plaintiff to walk upon and use as a means of ingress and egress to and from the house; that it was also the duty of the defendants to exercise reasonable care in guarding any openings or excavations it made on said property so that plaintiff and other invitees would not, in the exercise of reasonable care, fall into the same. (3) That the defendants dug the hole in question and failed to guard the same or provide a reasonably safe passage over or around the same and that by reason thereof were careless and negligent; that their carelessness and negligence was the sole proximate cause of the plaintiff's accident and injuries. (4) That the plaintiff was in the exercise of reasonable care and caution immediately preceding and at the time of the accident and there was no negligence on her part proximately contributing thereto. (5) That the plaintiff was entitled to recover the sum of $2,496.50 from the defendants Kress House Moving Corporation, a corporation, and Edwin O. Egnew.

"With the exception of the amount estimated by the court as a just award for the injuries suffered by Mrs. Donahoo, the appellant contends that all the foregoing conclusions are unwarranted under the testimony submitted. . . .

"Miss Donahoo was the tenant of Hansen, the owner of the property, before and during all the moving operations. As such, she was an invitee and so was her mother, a member of her household and acting as her housekeeper. As stated in 36 C. J., p. 217 (Landlord & Tenant), the rule reads, 'Where the landlord undertakes to make repairs upon the demised premises, he is liable for injuries resulting from the negligence of himself or his servants in making such repairs. The liability of a landlord in such cases is not limited to the tenant personally, but includes all persons who, within the contemplation of the parties, were to use the premises under the hiring.' See, also, 32 Am.Jur., section 665, p. 529 (Landlord & Tenant), which states, '. . . It is the well-settled gen-

eral rule that the duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant himself. For this purpose they stand in his shoes. This rule applies to the tenant's wife or child.' ██ Since the defendants permitted Miss and Mrs. Donahoo to remain on the premises their status did not change; they remained invitees. ██ Appellants argue that since Donahoo was negotiating during the month of February for a reduction of rent because of the change in the condition of the premises which she occupied, she became a tenant at sufferance merely because her rent was not paid promptly on February 1st, the day when it was due. We do not think this reasoning is sound for Miss Donahoo stayed on with the consent of her landlord and, since she rented on a month to month basis, her holding over did not change her status to that of a tenant at sufferance. 'In the case of a prior tenancy from month to month, a tenant, on the election of the landlord so to treat him, becomes or remains a tenant from month to month.' (32 Am.Jur., sec. 941, p. 793; see sec. 1946, Civ. Code.) Under this rule Miss Donahoo was still owed the same degree of care that was due her before the negotiation for the reduced rent began. The same, of course, is true of her mother. ██ When the defendants permitted these two women to remain upon the premises, they accepted them as invitees to whom they owed ordinary and reasonable care since they continued as tenants, and the defendants, by the terms of the moving contract with Hansen, were given complete possession and control of the buildings and the property involved in the moving operations.

██ "Appellants contend that the court erred in concluding that it was the duty of the defendants to provide a reasonably safe passageway on the Hansen lot for the plaintiff to use in going to and coming from her house, but under the circumstances of this case it clearly appears that some provision of this sort should have been made. The defendant Egnew testified that, while the moving operations were going on, the area between the Donahoo house and Hollywood Boulevard was 'about like a pig pen in winter.' Notwithstanding that, and with full knowledge that women were entering and leaving the house, neither he nor anyone by his order, according to his testimony, laid any boards or planks over the short distance, approximately 15 or 20 feet, from the front of the Donahoo house to the paved driveway leading to Gower Street,

while the work was going on in the front part of the Hansen lot, nor did they provide means of entry or exit elsewhere on the premises. A witness, George Gray, describing the condition north of the Donahoo house, stated, 'it was strewn with brush and with timbers, with sand, with concrete, concrete mixers, and everything that a person would use in moving and building foundations'; also that when the Donahoo house was in its old location a cement sidewalk led from the front of their house around on the east side of the Taylor house, to the front of the Taylor house, and on to the walk, but that prior to February 22, 1941, 'The biggest part of it had been broken up by the trucks and then moved out completely.' Plaintiff's Exhibit 4 vividly depicts the condition of the area between the Donahoo house and Hollywood Boulevard. We find the appellants, in their opening brief, mentioning that 'there were concrete mixers, sand, cement, concrete forms and other paraphernalia connected with construction operations upon the premises. The cement contractor had dug trenches for the purpose of laying the foundations for both houses; the plumbing contractor had laid pipes on the ground in the vicinity of both houses; trees and shrubbery were uprooted all over the premises and timbers which were essential to the house moving operations and the construction work necessarily were lying on the ground surrounding both houses.' Instead of providing a reasonably safe means of ingress and egress the defendants, according to the finding of the court, dug the hole, which we have heretofore described, at the northwest corner of the Donahoo house and immediately adjacent to it. Having complete control of the property, they stood in the same position as a landlord and, in our opinion, violated the rule stated in 15 Cal.Jur., p. 741, 'Where a landlord retains or has control of a portion of the leased premises, the responsibility rests with him to see that no injury results to those having rights there because of the way in which that portion is occupied or used.' See Davis v. Pacific Power Co. (1895), 107 Cal. 563 [40 P. 950, 48 Am.St.Rep. 156]; Mendelsohn v. Van Herick (1933), 133 Cal.App. 612 [24 P.2d 878], where the court said, page 615, 'It is true as defendant contends, that 'an invitation to use property on which work is being done extends to the property in its then condition, and invitees using the property assume the risk of such condition' (45 C.J., p. 837);

but obviously such rule does not do away with the legal duty imposed upon the owner to use ordinary care to keep the premises in a reasonably safe condition for those he has invited to come upon them.' In speaking of liability for injuries, we find the following in Restatement, Torts, vol. II, section 384: 'Persons Creating Artificial Conditions on Land on Behalf of Possessor For Bodily Harm Caused Thereby While The Work Remains In Their Charge. One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to the same liability, and enjoys the same immunity from liability, as though he were the possessor of the land, for bodily harm caused to others within and without the land, while the work is in his charge, by the dangerous character of the structure or other conditions.' The 'other condition' which proved dangerous to Mrs. Donahoo consisted of the open hole dug by the defendants, left unguarded and, according to Miss Donahoo, never completely filled. Under the circumstances of the case this condition might well be called a trap created by the negligence of the defendants. . . ."

The evidence "furnished ample grounds for the court's conclusion that it was also the duty of the defendants 'to exercise reasonable care in guarding any openings or excavations it made on said property so that plaintiff and other invitees would not in the exercise of reasonable care fall into the same.' In the case of *Hall* v. *Barber Door Co.* (1933), 218 Cal. 412, 419 [23 P.2d 279], it is stated . . .": "It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner for any wrongful acts that may be committed by himself or his employees while the stipulated work is in progress and resulting in injuries to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, rightfully on the premises, are not injuriously affected by the performance of the work. (*Charlock* v. *Freel,* 125 N.Y. 357 [26 N.E. 262] ; see, also, 38 A.L.R. 403; *Pettyjohn & Sons* v. *Basham,* 126 Va. 72 [100 S.E. 813, 38 A.L.R. 391], where the cases are exhaustively collected and commented upon.) Upon both principle and authority, it is clear that an independent contractor, who by his own negligence creates dangerous conditions during

the progress of the work, should be held responsible for an injury occasioned by those conditions to one rightfully on the premises, and should be held liable for damages directly attributable to the failure to perform his duty. (Citing Cases.)'' In that case, as in this, the defendant independent contractor contended that as to it the plaintiff was a mere licensee. The court said at page 420, ''For reasons already stated, we do not think this is so, but even if it were, the judgment of nonsuit would have to be reversed. As already pointed out, defendant installed the door and knew that the set-screws had not been counter-sunk. Under such circumstances, the jury could have found that defendant knew, or should have known, that persons rightfully on the premises were likely to use that door; that defendant knew or should have known that it would be dangerous to use the door under those circumstances. We think the jury could have inferred that as left by defendant there was an implied invitation to use the door. The jury could also have found that as left by defendant the door was a dangerous instrumentality within the meaning of that doctrine as recently enunciated by this court in *Dahms* v. *General Elevator Co., supra* [214 Cal. 733 (7 P.2d 1013)], and that as constructed and left by defendant, it was in legal effect a trap of the existence of which it was defendant's duty to warn even licensees.''

''In view of all the foregoing, it might well be argued that even if Mrs. Donahoo is considered a licensee, the appellants failed in the duty which they owed her.

''Adverting to the argument by the appellants that any fill made at the points where anchors were installed on the Hansen property had sunk by reason of heavy rains and therefore the defendants should not be held liable, we cannot accept this as a sound principle. In the case of *Ames* v. *Gannon* (1909), 77 N.J.L. 385 [72 A. 27], 38 A.L.R. 418, the syllabus states the rule : 'A person who excavates a trench in a public highway and places therein a sewer for property owners, under a private contract with them, is bound to restore the street to a safe condition, and this duty is not answered by simply replacing the excavated earth and leaving the street without further examination or attention, for he is charged with the knowledge that earth in a newly filled trench is likely to settle after a heavy rainfall, which imposes on him a duty to ascertain whether under such circumstances that condition exists, and, if it does, to make the necessary repairs.'

■ "The objection of the appellants to the conclusion of the court that defendants' carelessness and negligence 'was the sole proximate cause' of the plaintiff's accident and injuries, we believe, is answered by the rule just quoted, for if the fill had been maintained on a level with the surrounding surface there would have been no hole for Mrs. Donahoo to fall into.

■ "The appellants rely strongly upon their affirmative defense of contributory negligence and argue that the adverse conclusion reached by the trial judge upon that question cannot be supported for the reason that the conditions show contributory negligence upon the plaintiff's part as a matter of law. We believe, however, that the trial judge was entitled to treat it as a question of fact to be decided by him. If one considers the actions of Mrs. Donahoo, aware as she was that her daughter and her friend, Miss Young, over a period of two weeks or more, had made frequent trips to and from her house to the fence corner where the boards had been ripped off, can it be said that she was contributorily negligent in taking a path which she knew existed and which, until then, had proven safe? Undoubtedly, this was one of the questions which the court had in mind when considering the subject of contributory negligence. Even if the lights, which Mrs. Donahoo turned on before making the trip, did not illuminate all the area traversed, the court would still be entitled to consider, as bearing upon the question of contributory negligence, the fact that she was able, nevertheless, without any apparent difficulty, to go to the fence corner where she met Miss Young before turning back toward her house. These conditions, in our opinion, sufficiently answer the contentions of appellants that the respondent was guilty of contributory negligence as a matter of law, and, at the same time, furnish a substantial basis for the court's decision in favor of the respondent upon the question of contributory negligence as one of fact, a decision which, so far as we are concerned, is conclusive. (*Hanson* v. *Cordoza* (1930), 106 Cal.App. 500, 502 [290 P. 62].)''

Our conclusion is in harmony with the case of *Oettinger* v. *Stewart*, 24 Cal.2d 133 [148 P.2d 19], where the defendant negligently fell down the steps of her own premises and injured the plaintiff, a business invitee, and this court reversed a judgment entered on the verdict for the defendant which appeared to be the product of erroneous instructions

regarding the duty of the defendant to the plaintiff. Here it seems to be the contention of the defendants that because the plaintiff could not be said to have had any business relations with the defendants, she must necessarily be considered a mere licensee or a trespasser. The result contended for does not follow. The plaintiff remained in the occupancy of the premises by the permission of the defendants while they had possession thereof for the purposes indicated. In the course of that occupancy, in going to and from the house to the street, the plaintiff was compelled to cross the premises at some point, and the defendants must have been aware of the necessity for a reasonably safe passageway for that purpose. In the Oettinger case it was said at page 136 [24 C.2d] : "An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises, or local custom." In the present case the permission of the defendants for plaintiff's occupancy during the construction, and the plaintiff's necessity to traverse the premises in going to and from the street placed upon the defendants the duty of providing a reasonably safe passageway to serve the plaintiff's necessity.

*Powers* v. *Raymond,* 197 Cal. 126 [239 P. 1069], relied upon by the defendants, is not controlling here. It was there held that the plaintiff was contributorily negligent in choosing a dark unused path when a safe and lighted way was afforded by the defendant.

Nor is our conclusion inconsistent with the decision in *King* v. *Griffith Co.,* 65 Cal.App.2d 114 [150 P.2d 8], cited by the defendants on oral argument. In that case the decision recognized the plaintiff as an invitee in relation to the defendant construction company which was in control of the premises. It was determined that the plaintiff, who was injured while attempting to cross a ditch during daylight, was contributorily negligent in not observing the ditch which was as obvious to him as to those who had crossed it safely immediately in front of him and which he himself had crossed on previous occasions. (*Cf. Locke* v. *Red River Lumber Co.,* 65 Cal.App.2d 322 [150 P.2d 506].)

The judgment is affirmed.

SCHAUER, J.—I dissent. The findings of the trial court do not, in my opinion, support the conclusion "That it was

the duty of . . . defendants to provide a reasonably safe passageway on said property for plaintiff to walk upon and use as a means of ingress and egress. . . ." The trial court found "that the plaintiff and her daughter occupied the Donahoo house with the knowledge and implied consent of the defendants" and that "defendants knew at all times prior to and at the time of the accident that it was necessary for plaintiff and her daughter to have means of ingress and egress to and from their place of abode and that by reason of debris, boards and timbers and moving equipment which were piled up in front of the new location of the Donahoo home and because of rainy weather and muddy conditions that had been created thereby, that . . . their only . . . means of ingress and egress to and from their house was by the use of the front entrance and through a portion of the yard . . .; that the defendants . . . failed to provide a reasonably safe passageway from the front entrance of the Donahoo house. . . ."

Defendants are house movers. By their contract with Hansen they agreed to move houses and so far as the evidence shows they carried on the moving operations in an ordinary and reasonable manner which necessarily involved the littering of the premises with materials and the digging of holes. The majority opinion now holds that "When the defendants permitted these two women [plaintiff and her daughter] to remain upon the premises, they accepted them as invitees," and that "Having complete control of the property, they [defendants] stood in the same position as a landlord" and assumed the same duty of furnishing a safe passageway to these tenants as a landlord who maintains common hallways and entrances in an apartment house.

There appears no basis for the imposition on the defendants of an affirmative duty to construct and maintain a means of ingress and egress for the plaintiff. The contract with Hansen did not give rise to such a duty. So far as appears, by that contract defendants simply agreed to move houses; the "possession" which was agreed to be furnished them was possession for the sole purpose of performance of the contract by the moving of the houses in the usual manner.

Neither does it appear that the "implied consent of the defendants," with which, as found by the trial court, plaintiff occupied the house, coupled with the knowledge of the defendants "that it was necessary for plaintiff . . . to have

means of ingress and egress," imposed upon the defendants the duty of providing a passageway. If defendants could consent to the occupation of the house by plaintiff it would seem that they could have refused such consent. But according to the holding of the majority opinion the defendants had no such simple choice of permitting or refusing to permit plaintiff to occupy the house during the moving operations; since they did not object, their "implied consent," the majority hold, became an invitation to plaintiff, not merely to occupy and go to and from the house, but also to walk about the premises in the dark in the assurance that defendants had provided a safe pathway. The defendants did nothing to give plaintiff any such assurance. They did not lay out any temporary walk, nor were they requested to do so by the tenants of the Donahoo house. The only "path" consisted of small boards which had apparently been haphazardly thrown about. Defendants received no benefit from the occupancy of the premises by plaintiff and her daughter during the moving operations. Defendants' consent was purely a matter of convenience to such occupants. Could defendants not consent that the occupants merely remain at their own option and risk and subject to whatever conditions might be created in the course of the moving operations? By what right can this court impose any further obligation upon defendants? Are we to presume not merely a bare consent to occupancy but also an uncompensated covenant to depart from usual business practices for the benefit of the recipients of defendants' bounty? What is the measure of defendants' responsibility under the majority holding? Must they from hour to hour as the house slides back on the lot keep it in contact with a paved and rail-guarded walk? I perceive no established or just basis in law for answers to those questions which will support the majority holding. It has heretofore been the law that a licensee, whether business visitor or gratuitous licensee, "must accept or reject the possessor's consent to enter the land under the conditions which are known to him or which he could discover by the use of his senses" (II Rest., Torts, § 341, Comment d) and that "The licensee is not entitled to enter the land of another except in so far as he is privileged to do so by the possessor's consent. Therefore, the mere fact that the possessor has consented to his entry gives him no right to expect that the possessor will change the method in which he conducts his activity so as to secure

the licensee's safety. If he knows of the nature of the activities conducted upon the land and the manner in which they are conducted, he has all that he is entitled to expect, that is an opportunity for an intelligent choice as to whether or not the advantage to be gained by coming on the land is sufficient to justify him in incurring the risks incident thereto." (*Id.*, Comment a.)

"One who on behalf of the possessor of land . . . creates any . . . condition thereon is subject to the same liability, and enjoys the same immunity from liability, as though he were the possessor of the land, for bodily harm caused to others within and without the land, while the work is in his charge, by the dangerous character of the . . . condition." (II Rest., Torts, § 384; *Hall* v. *Barber Door Co.* (1933), 218 Cal. 412, 419 [23 P.2d 279].) The conditions here necessarily created by the defendants in the performance of their contract with Hansen were dangerous to one walking about in the mud and dark. But the defendants in creating such conditions were not negligent toward the plaintiff, who had elected to live in the midst of them. "A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, · for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein." (II Rest., Torts, § 340; *Shanley* v. *American Olive Co.* (1921), 185 Cal. 552, 555 [197 P. 793]; *Blodgett* v. *B. H. Dyas Co.* (1935), 4 Cal.2d 511, 512 [50 P.2d 801].) The moving of the two houses and the resultant conditions created by defendants involved a risk which should have been known to plaintiff because the risk was "necessarily inherent in the nature of the activity carried on" (II Rest., Torts, § 340, Comment c) and it was obvious to the senses.

The plaintiff, who had elected to occupy the house during the moving operations, was not entitled to expect that the land would remain in its normal condition and that her way of ingress and egress would remain substantially unobstructed. She testified not only that she did not know of the existence of the particular hole into which she fell, but that she had never even looked out from the front porch over the area where the accident occurred. But she had been living in the house during all the moving operations, which had continued for about three weeks before the accident, and it is inherently improbable and unbelievable that she was unaware that the

yard was torn up and littered with equipment. Furthermore, she testified that she turned on the house lights in order to illuminate the area to some extent and the accident happened as she was endeavoring to return to the house after once traversing the yard.

Plaintiff derived her privilege to remain on the land from the implied consent of the defendants, and the proposition stated in II Restatement, Torts, section 340, Comment e, applies: The licensee, whether business visitor (invitee) or gratuitous licensee, is "entitled to nothing more than knowledge of the actual conditions, which he will encounter if he avails himself of the possessor's consent. If he knows the actual conditions, he has an opportunity to exercise an intelligent choice as to whether the advantage to be gained from his entry is sufficient to justify him in incurring the risk which he knows is inseparable from it." (See, also, *Mautino* v. *Sutter Hospital Assn.* (1931), 211 Cal. 556, 561 [296 P. 76] ; *Watwood* v. *Fosdick* (1931), 212 Cal. 84, 85 [297 P. 881].) And in the exercise of an "intelligent choice" he must use his senses in perceiving that which is obvious. (II Rest., Torts, § 341, Comment d, quoted *supra.*)

The findings of fact do not support the conclusion that defendants "neglected to perform their duty . . . [to exercise reasonable care] in the matter of guarding" the hole into which plaintiff fell. The following language from *Webber* v. *Bank of Tracy* (1924), 66 Cal.App. 29, 36 [225 P. 41], applies: "No man is held by law to a higher degree of care than the fair average of his profession, business, or trade, and the standard of due care is the conduct of the average prudent man. . . . Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set a standard which shall, in effect, dictate the customs or control the business of the community." . It should not be expected that premises on which houses are being moved will be in a condition comparable to premises on which no such operations are proceeding. The area near the Donahoo house "was strewn with . . . everything that a person would use in moving and building foundations." It is common knowledge that the construction of foundations and the connecting of utilities ordinarily entail the digging of holes. There were brush and pieces of rope over which plaintiff might have tripped and beams against which she might have fallen (in-

cluding two beams on which plaintiff stepped just before she stepped down on the board which slipped into the hole), and all these obstructions, like the hole, were unguarded, but were in themselves most obvious warnings of danger. There is no more basis for holding that defendants, in order to escape liability, should have fenced the hole necessarily made by them in the performance of their work, than there is for holding that they should have cleaned up the entire premises when they temporarily suspended work because the heavy rains forced them so to do.

The majority opinion states that the unguarded hole "might well be called a trap created by the negligence of the defendants." The hole was no more a trap than were the other obstructions to safe travel above mentioned. Defendants did not lay out the rough path of boards which led past the hole; they did not in any way invite or encourage plaintiff to walk near the hole. They did not negligently create an appearance of safety; in the lawful exercise of their calling they created conditions which presented an appearance of danger and which constituted a warning to plaintiff.

As stated in *Mautino* v. *Sutter Hospital Assn.* (1931), *supra,* 211 Cal. 556, 561, "Even if the plaintiff were free from contributory negligence, 'not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages. . . .' " The plaintiff here voluntarily assumed the risk and lost. Her misfortune is regrettable but having assumed the risk she should bear the loss.

The judgment should be reversed.

Edmonds, J., concurred.