RIDER & TROTTER *v.* THE UNION INDIA RUBBER COMPANY.

The defendant used the property of the plaintiffs in its (the defendant's) business, under the belief of its managing agent that the company had purchased it ; and the plaintiffs left the same in the possession of the company, because it was their intention to sell the same to the company, and they expected the company would pay for it.

*Held,* 1. That the possession of the defendant being lawful, the statute of limitations was no bar to a recovery for the use of the property for the six years next before the commencement of the suit.

2. That notwithstanding the fact that the plaintiffs intended to sell the property to the defendant, and expected the latter would pay them for the same, the law would imply an agreement by the defendant to pay the plaintiffs the value of the use of the property during the time the same was used in its business.

3. That a former suit, brought by the plaintiffs, against the defendant, to recover the value of the same property as upon a *sale* thereof, and a judgment therein for the defendant on the ground that there was no sale and delivery of the property to the defendant, were not a bar to the present action to recover the value of the *use* of the property ; and that the defendant was *estopped* from insisting that the plaintiffs could have recovered the value of the property, in the former suit, had they produced all their evidence.

THIS action was brought in the New York Superior Court on the 10th day of October, 1856, by the plaintiffs as assignees of Goodyear & Ely. Two claims or causes of action were stated in the complaint. The first was for $1000, the alleged value of the use of one steam heater or curer, twenty-one work tables, one cylinder stove, one cast iron stove, two hundred and seventy-three pounds stove pipe, two pair shears, one set tin scales and weights, one pair patent shears and fire shovel, three coal scuttles and one pan, one counter, two willow baskets, one marking pot, one date box and three inkstands, one tin letter box, nail box and hammer, nine stools, one wire basket, one show case, one sign and pole, one blower, poker and fan, and six large packing boxes, from the 1st day of November, 1848, until the 1st day of October, 1855. It was alleged in this claim that the property was worth $824, when the defendant commenced using the same; but that the same, or the larger part thereof, had been consumed and rendered worthless by the defendants during the said time they had used the same.

The second alleged claim or cause of action was, that on or about the 1st day of September, 1855, the plaintiffs demanded a return of the above mentioned property, then being of the value of $200, and also then being in possession of the defendant; and that the defendant neglected or was unable to return the said property, or but a small part thereof. That the defendant had since purchased the said work tables from the plaintiffs, which were of the value of $30, at the time of such demand, for which the defendant was entitled to credit.

The plaintiffs demanded judgment against the defendant for $1000, with interest from October 1, 1855, and costs.

Four different defenses were set up in the answer. Two of them were a former suit in bar, and the statute of limitations, which are sufficiently noticed in the opinion of Judge BALCOM. The other defenses need not be particularly stated, as no question was raised respecting them.

The action was tried before a justice and a jury, at a special term of the Superior Court, in April, 1859. It appeared on the trial that the plaintiffs derived title to the property in question as assignees of Henry B. Goodyear and William F. Ely, for the benefit of the creditors of the latter. The defendant was incorporated in August, 1848, and commenced business at Harlem in the fall of the same year. The plaintiff Rider was then treasurer of the defendant, and continued as such until the 19th day of January, 1852. The plaintiff Trotter was president of the defendant (the company) from the time it was organized, until 1851. The defendant used the property in the business of the company from November, 1848, until the greater portion of it was worn out, destroyed or injured. The plaintiff Trotter demanded the property of the defendant, in October, 1856. The demand was made upon the secretary of the company. The secretary replied by telling him to take the goods if he could find them, but that the company did not acknowledge the plaintiffs owned any. Trotter testified that the plaintiffs took all the articles that were not destroyed or worn out; that the heater was broken to pieces, and other articles were then used up or worn out and thrown into the company's yard.

The plaintiff Rider testified that the property in question went into the possession of the defendant in November, 1848, and that "it was the intention of the plaintiffs to sell all these articles to the company, and for that reason they were left in the possession of the company." Also, "I don't know that any of the articles in the complaint mentioned were ever sold; we expected the company would pay for them." ·

Emory Rider testified that he was managing agent of the company up to the summer of 1850, and that the company used the property in question in their factory at Harlem. He was asked by the plaintiff's counsel: "Was there any agreement known to you, between Trotter and Rider, assignees,

and the company, about the use of this property?" (The defendant's objection to the question was overruled and an exception taken.) The witness then answered: "There was. The company were to buy them. That was the only agreement between the parties." He also testified that he understood from Trotter, about six weeks after the company was organized, that the company was to buy this property of the assignees. That he, as managing agent of the company, took the responsibility of using the property in question in the company's business. "We had use for the property and we expected to buy it; I knew it was to be sold. I supposed the company had bought it of the assignees of Goodyear & Ely. I proposed to Trotter that we should buy the articles. I am not aware that the subject of buying these articles was talked over at the meeting of the directors."

The plaintiffs proved, under the objection and exception of the defendant, that the value of the property in question was $824, when the defendant commenced using the same; that the value of the annual use of the same was at least ten per cent of the value and interest on the value, and that such value was reduced ten per cent by depreciation, each year.

The plaintiffs put in evidence a judgment roll, which showed that they sued the defendant in the N. Y. Superior Court in 1854, and claimed in that suit to recover the value of the property in question in this action, on the ground that they had sold and delivered such property to the defendant; and that they failed to recover the value of such property in that suit, on the ground that they did not sell and deliver to the defendant any of such property. The defendant's counsel objected to the judgment roll, on the ground that the defendants never claimed, and did not then claim, that they purchased this property of the plaintiffs. But the objection was overruled, and the defendant's counsel excepted.

At the commencement of the trial of this action, the plaintiffs expressly waived the right to recover the value of the

property in question, and stated that they went for the value of the use only. When the plaintiffs rested, the defendant's counsel moved for a nonsuit, without specifying any ground therefor. The motion was denied, and the defendant's counsel excepted.

The defendant's counsel put in evidence resolutions and by-laws of the company, for the purpose of showing that the plaintiffs could not, when officers of the company, make any valid contract for the sale of the property to the defendant, or for the use of it by the defendant; and he claimed that the defendant did not make any valid agreement with the plaintiffs as assignees, either for the use or purchase of the property, and that the defendant purchased the property of Rider & Brothers.

The defendant proved by one Shepard that the curer was not much used after February, 1853, when he became secretary; that it might have been used two months after he went there in February, 1853; that they certainly did not use it after the winter or spring of 1854; that it was then used up.

When the evidence was closed, the defendant's counsel moved that the complaint be dismissed, on the grounds,

"1st. It is in proof that the defendants commenced using the property in November, 1848, and demand was made October 1, 1855 or 1856, and therefore no action can be brought for the property.

2d. There is no proof of hiring, and no rent or value of use can be recovered, unless there be a hiring.

3d. The plaintiffs not being able to recover the property, can not recover for the rent."

The motion was denied; and the defendant's counsel excepted "upon each ground."

The judge charged the jury as follows: "The defendants claim that they took possession and have used the property as purchasers thereof, from Rider & Brothers, under the resolution of November, 1848; that they took possession as purchasers with the consent of the plaintiffs, and of Rider & Brothers, in the belief that all such articles were included

in the purchase from Rider & Brothers. If the plaintiffs included in their purchase from Rider & Brothers the articles in question, or if they acquiesced in the payment of the $30,000, by the defendants, and consented to their taking possession and using the articles under the belief that such articles were included in the purchase, they are now estopped from claiming title in themselves, as assignees of Goodyear & Ely, and can not recover for the articles, and the defendants will be entitled to a verdict.

If, on the contrary, the articles were not included in the purchase, and the plaintiffs did not acquiesce in the payment of that sum by the defendants, and consent to their taking possession of and using the articles under a belief that the articles were included in the purchase, then the plaintiffs are entitled to recover the value of the use for the period during which the property was used, within six years anterior to the commencement of this suit, (October 10, 1856,) as you shall find that value to be, under the evidence, with interest from the commencement of suit." .

The defendant's counsel excepted to that part of the charge which allowed a recovery for the use for any portion of time, more than six years having elapsed since they began the use; and also to that part which allowed the jury to find interest, it being an unliquidated account.

The jury rendered a verdict in favor of the plaintiffs for $500 damages, and $88.50 interest thereon.

The defendant's counsel, upon a case and exceptions, made a motion at a special term for a new trial, which was denied, and judgment was rendered on the verdict against the defendant, with costs. The order denying the motion for a new trial, and the judgment, were affirmed at a general term of the Superior Court, and the defendant appealed to this court.

*A. Thompson,* for the appellant.

*John T. Hoffman,* for the respondents.

BALCOM, J.   The verdict of the jury settled the question that the defendant did not purchase the property of Rider & Brothers, or obtain or use the same in a way to estop the plaintiffs from claiming title in themselves as assignees of Goodyear & Ely; also that the plaintiffs were the owners of the property.

The facts in the case are, in substance, as follows: The defendant used the property in its (the company's) business, under the belief of the managing agent that the company had purchased it; and the plaintiffs left the same in the possession of the company, because it was their intention to sell the same to the company, and for the reason that they expected the company would pay for it.

The property was such as the company needed in its business, and the plaintiffs assented to its use by the company until they demanded it, on the 9th day of October, 1856, which was one day prior to the time this action was commenced.

The statute of limitations was no defense to the action; for the plaintiffs were not permitted to recover for the use of the property, except during the time the defendant used it, within six years next before the commencement of the action. (See *Davis* v. *Gorton*, 16 N. Y. Rep. 255; *Sherwood* v. *Phillips*, 13 Wend. 479.)

I am unable to see how the prior use of the property by the company relieved the company from paying for the use of it within the six years; for the company was not guilty of a wrongful conversion of the same before it was demanded of the secretary. Its previous use by the company was with the knowledge and assent of the plaintiffs, and therefore was lawful.

The question whether the plaintiffs could recover the value of any portion of the property, as for a conversion thereof at the time the same was demanded, is not in the case. For the plaintiffs, at the commencement of the trial, waived all claim to its value, and went for the value of the use only.

The former suit and judgment were not a bar to this action. The defendant's counsel objected to the roll in that suit being given in evidence, on the ground that the defendant never claimed and did not then claim that it purchased the property of the plaintiffs. The defendant is therefore estopped from now insisting that the plaintiffs could have recovered the value of the property in the former suit, if they had given all their evidence, on the ground that the same was sold and delivered to the defendant; and that the former suit and judgment were a bar to this action, within the rule laid down in *Miller* v. *Manice*, (6 Hill, 114.)

The judgment roll in the former suit was competent evidence to establish the fact that the defendant never purchased the property in question of the plaintiffs. But if such evidence was unnecessary, under the disclaimer of the defendant's counsel that the defendant never claimed and did not then claim that it purchased the property of the plaintiffs, there was no legal error in admitting the roll in evidence. It only proved a fact which the defendant's counsel conceded.

The defendant's counsel contends that the plaintiffs could not recover for the use of the property, because the defendant took possession of it and used it under the belief of its managing agent that the company had purchased the same, and because the plaintiffs intended to sell it to the company and expected the company would pay them for the same. He relies upon *Smith* v. *Stewart*, (6 John. 46,) and *Bancroft and wife* v. *Wardwell*, (13 id. 489,) to sustain this proposition. The former case shows, that where there is a contract for the purchase of land, under which the purchaser enters into possession, but afterwards refuses to complete the purchase, the vendor can not maintain an action of assumpsit against him for use and occupation, but must resort to an action of trespass and ejectment to recover the mesne profits. Nothing different was decided in the latter case; and no intimation was made in either of those cases that the defendant could avoid liability for the use of the land when properly

proceeded against therefor.    Those cases therefore are not, in principle, against the recovery in this action, but rather favor it.

It is clearly just and equitable that the defendant should pay for the use of the property in question, while the same was used in its business; and the plaintiffs have only recovered for such use within the six years next before the commencement of the action.

The defendant, as has been seen, was not a wrongdoer in using the property, and was benefited by its use.    The plaintiffs did not give or intend to give the use of the same to the defendant; and notwithstanding the fact that they intended to sell the property to the defendant and expected the defendant would pay them for the same, I am of the opinion the law implies an agreement by the defendant to pay the plaintiffs the value of the use of the property while the same was used in its business.

Implied contracts "are such as reason and justice dictate, and which therefore the law presumes that every man undertakes to perform."    (1 Cowen's Tr. 2d ed. 47.)

The defendant is a corporation, and did not act in a manner to make a contract for the purchase of the property.    Its managing agent did not profess to make any agreement either for its purchase or use.    He testified that "we (meaning the company) had use for the property, and we expected to buy it;" and that he, as managing agent of the company, took the responsibility of using the same in the company's business.    Reason and justice, therefore, dictate that the defendant should pay the value of the use of the property while the same was used in its business; and I hold that the law implies the defendant agreed so to do.

The intention of the plaintiff to sell the property to the defendant, and their expectation that the defendant would pay for the same, do not, under the circumstances, forbid the idea of an implied agreement on the part of the defendant to

pay for the use of the property, though I confess the point is not free from difficulty.

I should have been better satisfied with a judgment for the value of the property at the time the same was demanded of the defendant, and for the sum it had been depreciated by being used by the defendant. But the judgment is less than it would have been if it had been given in conformity to such a rule; and as all forms of action are abolished by the code, the defendant can not complain of the judgment as it now is.

A new trial would only damage the defendant; for the plaintiffs could recall their waiver of the value of the property, and recover a larger judgment, on another trial, than they now have.

The point has not been made by the defendant's counsel, that interest was not allowable from the time the action was commenced.

My conclusion is, that no error was committed on the trial to the prejudice of the defendant, and that the judgment of the Superior Court should be affirmed, with costs.

DAVIES, J. also read an opinion in favor of affirmance.

                                  Judgment affirmed.