[Civ. No. 7483. Third Dist. Sept. 2, 1948.]

DORA M. BEDELL et al., Respondents, v. ALICE M. MASHBURN et al., Appellants.

Palmer & York for Appellants.

Francis H. Frisch for Respondents.

THOMPSON, J.—This is a suit to recover damages and the reasonable value of personal property consisting of pigs, poultry, grain, household furniture and a truck which were delivered to the defendants pursuant to an agreement to purchase the same at reasonable prices to be fixed by the owners. One month after delivery of the property the plaintiffs fixed the purchase price at $2,500, which defendants refused to pay. The defendants retained possession of the property, and used the household furniture and truck for their own benefit for a period of about one year. Without the consent of plaintiffs they killed and consumed two of the pigs and sold the remaining pigs, the poultry and the grain and appropriated the proceeds of said sales to their own use. Defendants wilfully or negligently damaged some of the articles of furniture.

The original complaint contained a mere common count demanding payment of the reasonable value of personal property sold and delivered to the defendants, in the sum of $2,421.50, which defendants refused to pay. No demurrer was filed. Defendants' answer denied the material allegations of the complaint. They filed a cross-complaint against Mr. and Mrs. Bedell for alleged services performed and for money expended for the benefit of plaintiffs at their special instance and request, in the aggregate amount of $1,075.25. Plaintiffs denied the allegations of the cross-complaint. Plaintiffs served upon the defendants an itemized bill of particulars pursuant to section 454 of the Code of Civil Procedure claiming the specified rental value of the furniture and truck. At the close of the trial, on motion of plaintiffs, they were permitted to and did

file an amended complaint to conform to the evidence, praying for reasonable rental value of the household furniture and of the farm truck. The court adopted findings favorable to the plaintiffs on the theory that the defendants converted and used the personal property for their own benefit to the damage of plaintiffs in the aggregate amount of $1,917.95, but allowed defendants an offset or reduction therefrom of the sum of $855, for money expended in purchasing feed for the pigs and poultry, for money expended in repairing the truck, and for labor performed in caring for the hogs and poultry. Judgment was thereupon rendered in favor of plaintiffs and cross-defendants for the sum of $1,062.95. From that judgment the defendants and cross-complainants have appealed.

The plaintiff and the cross-defendant, her husband, owned an 1,100 acre ranch in Napa County, together with the personal property which is involved in this suit. September 20, 1944, they sold the ranch to the defendants for $32,500. Independently of the sale of real estate, at the request of the defendants, plaintiffs agreed to sell to them the pigs, poultry, grain, household goods and truck which are involved in this action, for a reasonable price to be thereafter determined *by plaintiffs*. Mr. Bedell testified in that regard that Mr. Mashburn said they wanted to buy the personal property and have it left on the premises. The price was not then stated. Bedell testified that "they said that anything we wanted to leave there and sell to them at a fair price, *what we thought was a fair price,* was all right with them." (Italics added.) When the defendants took possession of the ranch, plaintiffs left with them on the premises, and delivered to them, under the agreement to sell the personal property, 400 sacks of grain, 100 chickens and ducks, 5 pigs, 1,000 feet of "sheet-rock" plasterboard, a water heater, household furniture and a farm truck. About one month thereafter the plaintiffs presented a claim of $2,500 for all of said personal property, which the defendants refused to pay, claiming that the price was too great. Negotiations followed, but the parties failed to agree upon a price which was satisfactory to both. Without the consent of plaintiffs the defendants thereafter killed and consumed two pigs, and sold the remaining pigs and their offspring, together with the grain and poultry, and appropriated the proceeds of said sales to their own use. They used the furniture which supplied several rooms in their home, together with a water heating tank, during the period of 11 months. They also used the

truck for farm work during that period of time. They appropriated and used 1,000 feet of sheet-rock plasterboard for their own benefit. Some of the articles of furniture were damaged or destroyed. After demand, this suit was commenced in February, 1946.

The court adopted findings determining that the defendants sold and converted to their own use the proceeds of sales of five pigs and their offspring of the reasonable value of $239, poultry of the value of $214, grain of the value of $493, and sheet-rock plasterboards of the value of $26.95; that they used for their own benefit household furniture of the rental value of $55, which they damaged in the further sum of $90; that they used the farm truck for their own benefit, which was of the reasonable rental value of $500, and converted to their own use the water heater of the value of $300, aggregating the sum of $1,917.95, no part of which was paid. As an offset to said award, the court allowed the defendants $265 expended by them for repairing the truck, $340 expended for purchasing grain and feed for the hogs and poultry, and the sum of $250 for labor performed in caring for the pigs and poultry, aggregating the sum of $855. Judgment was thereupon rendered for plaintiffs in the sum of $1,062.95, being the difference between said aggregate allowances to the respective parties. The plaintiffs recovered possession of their truck and household furniture. Defendants retained the water heater.

The appellants contend that the findings and judgment are not supported by the evidence; that the transaction constituted a mere bailment of the personal property and not a sale for the reasonable value thereof; that the rental values of the truck and household furniture were not proper issues at the trial; that the damages allowed plaintiffs for conversion of the pigs, poultry, grain, water heater and sheet-rock boards were excessive, and that the court abused its discretion in permitting plaintiffs to amend their complaint to set up their claim for rental value of the truck and furniture.

We are of the opinion the findings and judgment are adequately supported by the evidence, with the exception that an excessive allowance was made for the conversion of the water heater. There is ample proof, to support the findings, of the conversion of the pigs, poultry, grain, and other properties, and of the damages to and reasonable values of the same. The defendants wrongfully appropriated and disposed of the grain, pigs, poultry and sheet-rock boards, without the consent

of plaintiffs and contrary to their agreement. Their possession of the property was conditional upon their purchasing the same. Mr. Bedell testified they delivered to the defendants 400 sacks of grain weighing 100 pounds per sack, and that he had been offered $2.45 per sack for the grain. The court allowed them $493 for the grain, which was only $1.23 per sack. Mrs. Bedell testified that they delivered to defendants 100 ducks and 34 chickens, which weighed from 6 to 8 pounds apiece, and that she had previously sold similar chickens and ducks for 35 cents per pound, which, at the minimum weight of 6 pounds apiece, would furnish evidence of a valuation of more than $2.10 each. The court allowed plaintiffs $214 for the poultry, which would be an average valuation of only $1.58 apiece. Regarding the pigs, the defendant Edward Mashburn testified that 12 pigs were born to two of the sows and that he sold the 12 small pigs for $48. He admitted that, without the consent of plaintiffs, he killed and they consumed two of the matured pigs, one of which weighed 375 pounds and the other weighed 475 pounds. He said the butcher told him the pigs were worth 12½ cents per pound, and he testified that he received for the other pigs which he sold the sum of $368, no part of which was paid to plaintiffs. The court allowed plaintiffs, as the reasonable value of the pigs converted by defendants, only the sum of $239. Regarding the sheet-rock plasterboards converted by the defendants, Mr. Bedell testified that there were 1,000 square feet of that material for which he paid $50. The court allowed for that sheeting only the sum of $26.95.

There is ample evidence that the rental value of the furniture exceeded $55, which was allowed plaintiffs for the period of time it was used by the defendants, and that the rental value of the truck exceeded $500, which was allowed for that period of time. A sales manager of an automobile business testified that the rental value of the truck was $60 per month, or approximately $2.00 per day, which is not unreasonable.

Moreover, the court allowed the defendants, as an offset to said figures, the sums of $340 for grain and feed purchased by defendants for the pigs and poultry, $250 in payment for services performed in care of the pigs and poultry, and $265 expended by defendants for repairing the truck.

The respondents concede that the court erred in finding that the reasonable value of the water heater was $300. The evidence shows that it cost plaintiffs, with the attached fixtures, only the sum of $130.82. The judgment should be modified by

reducing it to the extent of the difference between said figures, which is $169.18. It is true, as the appellants contend, that, in the absence of an agreement between the parties, fixtures which are attached to the real property pass with a conveyance of the latter. But the rule is established that, as between the parties to a conveyance of real property, an agreement that an attached article shall retain its character as personal property and become removable by the owner of the realty, will be binding upon them. (*Dauch* v. *Ginsburg*, 214 Cal. 540, 544 [6 P.2d 952].) In this case the court specifically found that the parties agreed that the water heater should retain its character as personal property and become removable by plaintiffs.

We are of the opinion the reasonable value of the personal property in possession of the defendants, which was wrongfully converted to their use and benefit, and the reasonable rental value of the household furniture and truck, were proper issues in this suit. This was not an action in replevin or for specific performance. The property in question was delivered to defendants on an agreement that they would purchase it at a reasonable price *to be fixed by plaintiffs*. The price of $2,500 was subsequently fixed by plaintiffs. The defendants refused to purchase it at that price. Since the parties were unable to agree upon a selling price, it was defendants' duty to restore the property to the possession of plaintiffs in the condition in which they received it, subject to depreciation or loss sustained without the fault of the defendants. Certainly defendants did not have a right to damage or destroy the furniture, or to convert any portion of the property to their own use. Assuming, as defendants contend, without so deciding, that they became mere bailees thereof, they would still be liable for the reasonable value of the use of the property, and for the reasonable value of any such property converted by them. The property was delivered to the defendants with the understanding that they would purchase it and pay at least a reasonable price therefor. There was an implied agreement to pay a reasonable sum for its use, and for the value of any such property which defendants converted.

 One who is in possession of personal property as a bailee, who disposes of the property, destroys or converts it to his own use without the consent of the owner, is liable to the owner for the reasonable value, detriment or loss thereof, not exceeding the actual value of the article. (1 Restatement of the Law of Torts, § 226, p. 578; *Chatterton* v. *Boone*, 81 Cal.

424

App.2d 943 [185 P.2d 610]; *Rider* v. *Union India Rubber Co.,* 28 N.Y. 379; 8 C.J.S., § 31, p. 283.)

The reasonable rental value of the household furniture and truck were proper issues in this case. The complaint demanded "the reasonable value" of personal property sold and delivered to defendants. It did not allege a specified agreed purchase price. The bill of particulars which was served on the defendants specifically demanded rent for the furniture for 11 months in the sum of $82.50, and rent for the truck for the same period of time in the sum of $495. It has been held the bill of particulars "is an amplification of the complaint." (*Edelman* v. *McDonell,* 126 Cal. 210, 213 [58 P. 528]; *Silva* v. *Linneman,* 73 Cal.App.2d 971, 975 [167 P.2d 794]; 21 Cal.Jur. 69, § 43 at p. 71.) In the Silva case it is said the bill of particulars "is in the nature of a more specific allegation of the facts recited in the complaint." Moreover, the cross-complaint recognized that issue by setting up a counterclaim or offset to those items. And an amended complaint was filed by leave of court specifically alleging those identical claims. The defendants were not prejudiced thereby. The rental values of the properties were definite issues, and the court did not err in allowing the amendment to the complaint. It has been held an action based on a "common count," for goods sold and delivered, is sufficient to raise the issues ordinarily incident thereto. (*American-La France Fire Engine Co.* v. *Bagge,* 98 Cal.App. 291, 296 [276 P. 1066]; *Magee* v. *Kast,* 49 Cal. 141.)

The contract for sale of the goods was not necessarily void for uncertainty merely because the exact selling price was not specifically mentioned. When the goods are sold, delivered and accepted by the purchaser, even though the exact price is not specified, on the theory that the contract has been executed, there may be "an implied understanding between the parties that a reasonable price is to be paid." (*Jules Levy & Bro.* v. *A. Mautz & Co.,* 16 Cal.App. 666, 669 [117 P. 936]; *Hass* v. *Alpert,* 111 Cal.App. 26, 29 [295 P. 66]; *Charles Brown & Sons* v. *White Lunch Co.,* 92 Cal.App. 457, 462 [268 P. 490]; 6 Am.Jur. § 292, p. 377.)

The title to property sold and delivered is to be determined by the intention of the parties. When goods are delivered to a purchaser conditionally for "sale or return" to the owner, and the condition fails, and no time for the return is specified, they may be returned within a reasonable time. It is said in that regard in rule 3 (2)(b) of section 1739 of

the Civil Code, that "If he [the purchaser] does not signify his approval or acceptance to the seller, but retains the goods *without giving notice of rejection*, then, . . . *if no time has been fixed*," they may be returned within a reasonable time. (Italics added.) In the present case no notice of refusal to accept the goods was given. On the contrary most of them were converted to the use and benefit of the defendants.

In support of the theory that since the price of the personal property was not specifically fixed before delivery, the purchasers were liable for the reasonable value thereof, section 1729 of the Civil Code provides that:

"The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties. . . .

" (4) *Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price*. What is a reasonable price is a question of fact dependent on the circumstances of each particular case." (Italics added.)

In the present case the personal properties were delivered on an agreement to sell, and they were accepted, appropriated and used for the benefit of the defendants. But the trial court accepted the theory that title had not passed to the defendants, and, upon the contrary, that the defendants had converted plaintiffs' property to their own use. That was an issue in this case, and the findings in that regard are amply supported by the evidence.

The defendants contend that the action for conversion of the property was barred by the provisions of section 339 of the Code of Civil Procedure, because more than two years elapsed from the time of delivery thereof before the action was commenced. We think not. The goods were delivered in October, 1944. The complaint alleges that "within two (2) years . . . prior to the commencement of this action," the indebtedness (for conversion) occurred. The court found that the property was converted within said period of time. The evidence shows that the goods were converted after negotiations for the purchase price had failed, which was several months after delivery of the property. The suit was commenced February 26, 1946. It is apparent that if more specific findings had been adopted in that regard they would have been adverse to the defendants. The judgment may therefore not be reversed on that account. Moreover, an action for "taking, detaining, or injuring any goods, or chattels," may be brought within

*three* years. (Code Civ. Proc., § 338.) For the conversion of personal property, the statute of limitations does not begin to run until the time of the wrongful taking of the property or the occurrence of illegal exercise of dominion over it. (*Reed* v. *Molony,* 38 Cal.App.2d 405, 411 [101 P.2d 175]; *Chatterton* v. *Boone, supra,* at p. 947; Civ. Code, § 3336.) The last-cited section provides that ''The detriment caused by the wrongful conversion of personal property is presumed to be: First—The value of the property *at the time of the conversion,* . . .'' (Italics added.) For the foregoing reasons we are of the opinion the statute of limitations did not bar this action.

 Finally the appellants contend that the action failed, under section 1624a of the Civil Code, because the contract to sell was not in writing and it involved goods of a value in excess of $500. But that section has no application to this case, since, as we have previously held, the defendants ''actually received'' the goods and accepted them, as evidenced by their conversion of the property, and their conduct. That section provides in part:

''A contract to sell or a sale of any goods . . . of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer *shall accept part of the goods* . . . , *and actually receive the same,* . . .'' (Italics added.)

The judgment is modified by reducing it in the amount of $169.18, being the stipulated excess sum allowed for the conversion of the water heater. With that reduction, the valid balance of the judgment awarded to the plaintiffs is the sum of $893.77. As so modified the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.