[Civ. No. 30222.   Second Dist., Div. Two.   Nov. 18, 1966.]

GREENBERG BROTHERS, INC., Plaintiff and Respondent, v. ERNEST W. HAHN, INC., Defendant and Appellant.

Gooch & Barrett and Edward C. Terreri for Defendant and Appellant.

Merle Horwitz for Plaintiff and Respondent.

ROTH, P. J.—Appellant Ernest W. Hahn, Inc. (Hahn) appeals from a judgment of $5,100 in favor of respondent Greenberg Brothers, Inc.

Respondent had leased a store to be ready for occupancy on September 1, 1962, in a project known as Granada Village Center. The center was being constructed by Hahn. There were delays in meeting the occupancy date. On or about November 20, 1962, respondent approached Irving Poulter, leasing agent for the center, and requested that a place be provided to enable it to store merchandise received for use in the store which it had leased until it was ready for occupancy. Poulter contacted Don Rogers, job superintendent for Hahn, and arranged for the temporary storage area in the center.

Rogers gave respondent a key to the storage area and he informed respondent that he had an additional key and that the storage site would be locked at night but open during the day for access by workmen who were engaged in completing construction of the center.

The record shows that at the time Rogers gave respondent the key, there was a conversation with Poulter in which appellant was advised that respondent intended to store $35,000 worth of merchandise and questioned the security of the storage site which had been provided. He questioned the advisability of the additional key retained by appellant and whether or not appellant had covering insurance.

Several days after the conversation about the security of the

storage space, respondent's leased store was ready for occupancy and respondent moved the goods to its new premises. An inventory was taken concurrently and it was discovered that shoes and clothing accessories were missing of the cost price of $3,420.

The trial court found that appellant had accepted the merchandise on November 20, 1962, to store and safekeep until the store which had been leased by respondent, was ready for occupancy. These findings are supported by ample evidence.

Appellant contends that the trial court erred in concluding that a bailment of storage was created and that in effect it was a licensee of the owner of the center and insofar as respondent was concerned, it was a licensor.

■ Bailment is a contractual relationship. Its terms and objects are ". . . as various as the transactions of men." (*People* v. *Cohen,* 8 Cal. 42, 43.) Defined broadly, bailment is " 'the delivery of a thing in trust for some special object or purpose, upon a contract, express or implied. . . .' " (7 Cal.Jur.2d 616.)

A deposit of personal property to be cared for until the owner demands redelivery has been held to constitute bailment in a variety of factual contexts (see, e.g., *Robinson* v. *Haas,* 40 Cal. 474—delivery of sheep for keeping for period of time with redelivery to depositor; *Cussen* v. *Southern California Sav. Bank,* 133 Cal. 534 [65 P. 1099, 85 Am.St.Rep. 221]— renting of safe deposit box from bank). ■ The record shows that Jack Greenberg, president of respondent, negotiated through Poulter with Rogers, an agent of Hahn whose authority is not in issue, to arrange for storage of merchandise until such time as the store which he had leased from center was ready for occupancy.

Appellant argues in addition that if it was a bailee it received no consideration for the bailment and therefore, as a gratuitous bailee, its obligation was to exercise only "slight care for the preservation of the thing deposited." (Civ. Code, § 1846.)

■ Respondent had advised the center it would not go through with its lease because of noncompliance with the occupancy date. It is clear that Hahn was responsible to center to meet the occupancy date. The record shows that financing of the center depended on the existence of leases for the stores. Hahn depended for payment on the completion of his contract in such a manner as to enable center to keep its obligation to

lessees. Respondent was one of those lessees. Appellant's argument that the delays in meeting the occupancy date were not its fault does not contradict the obvious interdependence of completion of construction in such a manner as to enable center to regain all leases which had been executed. In a commercial context such as the record here demonstrates, it cannot be said that Hahn acted without consideration.

In *Homan* v. *Burkhart*, 108 Cal.App. 363, the court says at p. 366 [291 P. 624]: "Appellants' . . . contention is that the bailment was gratuitous and that therefore slight care only need be proven. With this contention we cannot agree. . . . ██ 'Where a bailment is a mere incident . . . to the conduct of the business from which the bailee derives profits, it is a bailment for mutual benefit, although the bailee receives no compensation for the bailment as such.' (6 C.J. 1100.) Appellants' were depositaries for hire. (Civ. Code, § 1851.)"

The court found as a fact:

"That defendant ERNEST W. HAHN, INC. did not take precautions for the safekeeping of said goods, and negligently permitted the pilferage and loss of $3,400 worth at cost price to plaintiff of the total merchandise stored."

Appellant contends that the finding of negligence made by the trial court is not supported by the evidence.

██ We do not agree. Michael Hubert, a dry-wall hanger employed by a subcontractor on the project, indicated that he saw the store standing open from 8 a.m. to 4 p.m. during the week following November 20, and that on one occasion he noticed shoes and handbags scattered about the premises. A day or so later, the goods were stacked up again. He also claimed that he was the only one, other than the person employed by Hahn, who unlocked the stores in the morning, who had occasion to work in this particular store during the period in question.

Hubert also testified that he reported to Rogers that "it would be awfully easy for someone to take something out of the store." When asked what Rogers' response was, Hubert said: "He just shrugged his shoulders and laughed. That was about it. He said, 'Yes, I think so.'"

There was evidence, also, that the key Rogers had retained was placed on a board in an open office at the construction site, with access to at least one other employee of Hahn. No special finding of negligence on appellant's part was required of the trial court. The casual treatment of the key was a breach of

the bailment agreement: the key was left readily available and the store open, unattended and unsupervised, even when no work was going on inside. If the merchandise was stolen by the employee who opened up the stores each morning, as the testimony of Hubert implies, or was removed by other employees or by outsiders who simply came on the premises, unnoticed, Hahn would be liable in that it failed properly to supervise the location. There was no evidence that any care, even the "slight care" which Hahn admitted was its obligation, was taken to supervise the store in question differently from all the others, which presumably were empty and under construction, or locked. There is nothing in the record other than the provision that the premises would be unlocked during the day for entry by workmen, which even hints at a lessened responsibility on appellant's part. Aside from testimony of assurances by Rogers that the goods would be secure, the implication from Rogers' own testimony is that the workmen for whom access was being provided were employees of appellant or subcontractors hired by appellant. As job superintendent, he would presumably, be responsible for their activities.

■ A bailee is not, absent specific agreement, an insurer. (*Perera* v. *Panama-Pacific Intl. Expositon Co.*, 179 Cal. 63 [175 P. 454]; *Homan* v. *Burkhart, supra,* at p. 366.) ■ He is however obligated to perform the terms of the bailment agreement and is liable for their breach through negligence or otherwise. "A depositary or bailee for hire is liable only when he has been guilty of some negligence. He is chargeable only with ordinary care and diligence in safeguarding his bailor's property. . . ." (*Baxter* v. *Shanley-Furness Co.*, 193 Cal. 558, 561 [226 P. 391]; see also *Webber* v. *Bank of Tracy,* 66 Cal.App. 29, 33 [225 P. 41].)

Appellant's final contention is that the amount of damages awarded for loss of profits is speculative and unsupported by the record. Evidence was introduced of the wholesale cost of the goods lost, of their special character for holiday season selling, and of the impossibility of replacing them for the 1962 Christmas selling period.

■ Although it is clear that loss of profits is a proper element of damages in respect of the breach of certain contracts when there is a showing of a reasonable probability of profits (*Shoemaker* v. *Acker,* 116 Cal. 239, 245 [48 P. 62]; *Hacker Pipe Co.* v. *Chapman Valve Mfg. Co.*, 17 Cal.App.2d

265, 267 [61 P.2d 944]), there is no such assumption in respect of a bailment. (*Bedell* v. *Mashburn*, 87 Cal.App.2d 417, 423-424 [197 P.2d 98]; *Wolfe* v. *Willard H. George, Inc.*, 110 Cal.App. 532, 537 [294 P. 436].) Section 1840 of the Civil Code provides the measure of damages as follows:

"The liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor, or has reason to suppose, the thing deposited to be worth."

In *Wolfe, supra,* furs were left with defendant bailee for safekeeping, evidence of the original cost price was admitted to show market value and the suggestion is that cost price or market value at the time of the loss is the measure of damages. *Bedell, supra,* is to the same effect.

On the record before us we find nothing that informed the bailee or from which he could have supposed that the merchandise stored was worth more to respondent than he paid for it or that if any of it were lost, respondent could not have replaced the lost merchandise at the same price he originally paid.

The judgment is affirmed to the extent that it allows respondent the costs of the merchandise, to wit: $3,420 and modified to eliminate therefrom any allowance for profit. The trial court is directed to enter a modified judgment in accordance with these directions.

Herndon, J., and Fleming, J., concurred.